UNITED STATES of America, Plaintiff–Appellee,

v.

Reginald Keith CARHEE, Defendant–Appellant.

No. 93–6323.

United States Court of Appeals, Tenth Circuit.

June 22, 1994.

---

Submitted on the briefs: *

Chris Eulberg, Eulberg & Brink, Oklahoma City, OK, for defendant-appellant.

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Vicki Miles–LaGrange, U.S. Atty., and Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Before MOORE, ANDERSON, and KELLY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Reginald Keith Carhee entered a conditional plea of guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). He appeals the district court's denial of his motion to suppress evidence seized from his briefcase following an encounter with Drug Enforcement Administration (DEA) and Oklahoma City Police Department (OCPD) officers outside the Will Rogers World Airport in Oklahoma City, Oklahoma. Carhee contends that his Fourth Amendment rights were violated because he was seized without reasonable suspicion and his briefcase was searched pursuant to an invalid warrant, or, alternatively, the search was beyond the scope of the warrant. We affirm.

## BACKGROUND

OCPD Officer James Hughes testified to the following facts at the hearing on the motion to suppress. *See* R. Vol. II at 5–43. Carhee did not testify and does not dispute these facts on appeal.

Carhee arrived in the Oklahoma City airport at 6:20 p.m. on May 21, 1993, on a flight from Los Angeles, California. He proceeded through the concourse, down an escalator, and outside to the curb where he waited for a taxi. He carried one clothes bag and a briefcase. At the curb, as his taxi arrived, Carhee was approached by Officer Hughes and DEA Agent Kevin Waters.

Waters had received a tip from the Los Angeles DEA that two persons boarded Carhee's flight under suspicious circumstances, paying for quick round-trip tickets with cash shortly before departure. Waters, Hughes, and OCPD Officer Gil Riggs waited at the arrival gate and watched the passengers deplane. Carhee was followed off the plane by three persons appearing to be together, two of whom fit the descriptions given by the Los Angeles DEA. The officers followed the three persons, and Carhee, through the airport.

While Carhee went directly outside, the other three persons proceeded to the baggage claim area. Moments later, one of the three, Manvel Perkins, walked outside and talked to Carhee and then returned inside to baggage claim. While Officer Riggs stayed inside, Agent Waters and Officer Hughes walked outside and approached Carhee.

Agent Waters and Officer Hughes identified themselves, showed their badges, and asked Carhee if they could speak with him. He said yes. Waters and Hughes, who were wearing plain clothes and whose weapons were concealed, asked Carhee if he had any identification, and he said no. They asked where he had arrived from, and he said Memphis. Officer Hughes thought Carhee appeared nervous. They asked Carhee if they could see his plane ticket, at which point he told them he had actually come from Los Angeles. He showed them his ticket, which was issued to Raymond Jones. Carhee identified himself as Raymond Jones.

The officers then asked Carhee "if he was carrying any narcotics into Oklahoma City." He said no. The officers then asked for, and received, permission to search his luggage. Nothing unusual was in his clothes bag, although Hughes thought it was unusual that there were no toiletry items in the bag. The officers asked Carhee if he had anything in the briefcase, and he said no. Carhee consented to a search of the briefcase, but it was locked, and he said he did not know the combination. Asked why he did not know the combination, Carhee said the briefcase did not belong to him. Carhee pointed to Perkins standing some distance away and said the briefcase belonged to him. Officer Hughes testified that Carhee's nervousness had increased to the point where he was physically shaking.

Agent Waters and Officer Hughes then informed Carhee that they were seizing the briefcase temporarily to have it tested by a dog sniff. They told him he could accompany them with the briefcase, or he could go on his way and give them an address and phone

number where they could reach him. Carhee elected to stay with the briefcase.

As Carhee and the officers walked inside and downstairs to the airport police station, Carhee volunteered that a man named "Ronnie" in California had paid him $1,000 to carry the briefcase to Oklahoma City, no questions asked, and therefore he also suspected that the briefcase contained narcotics. The officers then told Carhee that he would have to remain at the airport pending a dog sniff of the briefcase.

The nearest trained narcotics dog was located at Officer Hughes's home, about 15 minutes from the airport. Officers Hughes and Riggs went immediately to Hughes's house, and the dog alerted to the briefcase. The officers prepared a search warrant and affidavit, called a local judge, and got permission to bring the papers to the judge's house for approval. They took the briefcase with them to the judge's house. At approximately 10:30 p.m., the judge approved the search warrant. Hughes immediately opened the briefcase and discovered about a kilogram of cocaine. He called back to the airport, where Carhee and Perkins were arrested.

The district court denied Carhee's motion to suppress. In a written order entered August 2, 1993, the district court held that Carhee's initial encounter with the police was consensual, that by the time the officer decided to detain the briefcase for a dog sniff there were articulable facts giving rise to a reasonable suspicion that it contained contraband, and that neither the search, the warrant, nor the duration of the detention violated the Fourth Amendment. R.Vol. I, Tab 22.

## DISCUSSION

■■■■ Carhee challenges warrantless police action (the encounter at the airport), the search of his briefcase pursuant to a warrant, and the warrant itself. As to the warrantless encounter, Carhee bears the burden of proving whether and when the Fourth Amendment was implicated (*i.e.*, the point at which he or his luggage was "seized").[1] The government then bears the burden of proving that its warrantless actions were justified (*i.e.*, as a lawful investigatory stop, or under some other exception to the warrant requirement).[2] Generally, "if the search or seizure was pursuant to a warrant, the defendant has the burden of proof."[3]

■■ On appeal from the denial of a motion to suppress, we view the evidence in the light

---

1. See *United States v. Crocker*, 510 F.2d 1129, 1135 (10th Cir.1975) (defendant has burden of proving a prima facie Fourth Amendment violation); *see also United States v. Lyons*, 992 F.2d 1029, 1031 (10th Cir.1993) (defendant must prove his standing to challenge a search); *United States v. Singleton*, 987 F.2d 1444, 1447 (9th Cir.1993) (defendant must prove a legitimate expectation of privacy in the place searched); *cf. United States v. Dewitt*, 946 F.2d 1497, 1499–500 (10th Cir.1991) (noting that while defendant has burden of proving standing, the government must raise lack of standing in the trial court or the issue is waived), *cert. denied*, —— U.S. ——, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992).

It is in this context that we have occasionally made a general statement such as, "The proponent of a motion to suppress bears the burden of proof." *See, e.g., United States v. Girolamo*, 23 F.3d 320, 325 (10th Cir.1994); *United States v. Moore*, 22 F.3d 241, 243 (10th Cir.1994). Such elliptical statements, commonly made when the burden of proof is neither disputed nor dispositive, are, of course, limited to their context.

2. See *United States v. Roch*, 5 F.3d 894, 897 (5th Cir.1993) (government must prove reasonable suspicion justifying warrantless seizure); *see also Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) (government has burden of proving seizure was "sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."). Similarly, the government bears the burden of justifying its warrantless searches. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971) (government has burden of proving exception to warrant requirement); *United States v. Iribe*, 11 F.3d 1553, 1556 (10th Cir.1993) (government must prove valid consent); *United States v. Parra*, 2 F.3d 1058, 1064 (10th Cir.) (government must prove exigency), *cert. denied*, —— U.S. ——, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993); *United States v. Maestas*, 2 F.3d 1485, 1491 (10th Cir.1993) (citing numerous examples); Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.2(b), at 218 (2d ed. 1987) ("[I]f the police acted without a warrant the burden of proof is on the prosecution.").

3. LaFave, *Search and Seizure* § 11.2(b) at 218; *see United States v. McKneely*, 6 F.3d 1447, 1455 (10th Cir.1993) (noting strong presumption in favor of warrant searches).

most favorable to the government and we review the district court's factual findings only for clear error. *United States v. Muldrow,* 19 F.3d 1332, 1335 (10th Cir.1994). We review de novo, however, the district court's conclusions as to when a seizure occurred, *United States v. McKneely,* 6 F.3d 1447, 1451 (10th Cir.1993); *United States v. Bloom,* 975 F.2d 1447, 1450 (10th Cir.1992), *explained, United States v. Little,* 18 F.3d 1499 (10th Cir.1994) (en banc), and whether the officers had reasonable, articulable suspicion of criminal activity at the time of the seizure. *United States v. Jones,* 998 F.2d 883, 884 (10th Cir.1993); *United States v. Hall,* 978 F.2d 616, 619 (10th Cir.1992). The ultimate determination of reasonableness under the Fourth Amendment is also a question of law that we review de novo. *United States v. Little,* 18 F.3d 1499, 1503 (10th Cir.1994) (en banc).

### I. *Lawfulness of the Seizure*

■ Carhee contends that he was illegally seized "as soon as the officers hailed him." Appellant's Br. at 9. The district court found that there was no seizure of Carhee or his effects until the officers detained his briefcase, at which point they had reasonable suspicion to believe Carhee was carrying contraband.

■ "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). "[T]he Fourth Amendment permits police officers to approach individuals at random in airport lobbies and other public places to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate." *Id.* 501 U.S. at 431, 111 S.Ct. at 2384. The test for whether a particular encounter constitutes a seizure is: "consider[ing] all the circumstances surrounding the encounter ... whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* 501 U.S. at 436,

111 S.Ct. at 2389. The test is objective and fact specific. *Little,* 18 F.3d at 1503.

Carhee contends that "any reasonable person hailed by Agents flashing DEA credentials would assume they were required to stop and cooperate fully unless told differently." Appellant's Br. at 9. To the contrary, the Supreme Court and this court have examined police-citizen encounters where police have flashed their badges and initiated a dialogue and have held them to be consensual. *See Florida v. Rodriguez,* 469 U.S. 1, 4–6, 105 S.Ct. 308, 310–11, 83 L.Ed.2d 165 (1984) (per curiam); *United States v. Zapata,* 997 F.2d 751, 754, 756–58 (10th Cir.1993). Carhee points to no other circumstances or police conduct that would have communicated to a reasonable person that he or she was not free to terminate the encounter. Based on the totality of the circumstances as determined by the undisputed facts, we hold that Carhee was not seized when the officers initially approached him, and therefore the reasonableness of the officers' suspicion, if any, of criminal activity at that time is irrelevant.

■ Carhee claims that if he was not seized initially, then the Fourth Amendment was "surely" implicated when the officers took his briefcase. Appellant's Br. at 10. We agree. The seizure of his briefcase, for the purpose of arranging its exposure to a narcotics detection dog, was permissible only if the officers at that time had reasonable articulable suspicion that the briefcase contained narcotics. *United States v. Place,* 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); *United States v. Moore,* 22 F.3d 241, 243 (10th Cir.1994). A reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). Whether officers had a reasonable suspicion justifying their action must be evaluated under the totality of the circumstances. *Id.* at 8, 109 S.Ct. at 1585–86.

■ The district court did not specify the objective factors on which it relied in concluding that the officers had reasonable suspicion to seize the briefcase. From the rec-

ord, however, we can identify several: (1) Carhee lied about his departure city, telling the officers he came from Memphis when the officers knew he had come from Los Angeles, a source city for narcotics, *see Moore,* 22 F.3d at 243 (defendant's lie about where he had arrived from was a factor supporting reasonable suspicion); *United States v. Pantazis,* 816 F.2d 361, 363 (8th Cir.1987) (same); (2) Carhee admitted that the briefcase he was carrying did not belong to him, and that he did not know the combination to open it, *see United States v. Manuel,* 992 F.2d 272, 274 (10th Cir.1993) (defendant's vagueness about the contents of a package was suspicious); *United States v. Vasquez,* 612 F.2d 1338, 1344 (2d Cir.1979) (defendant's lack of knowledge of the contents of the bag was suspicious), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 857 (1980); (3) Carhee identified the owner of the briefcase as Perkins, who officers had seen talking to Carhee moments earlier and who appeared to be traveling with the two persons who were the subjects of the tip from the Los Angeles DEA; and (4) Carhee became increasingly nervous during the encounter. Even giving little weight to Carhee's apparent nervousness since it is more subjective, *see United States v. Fernandez,* 18 F.3d 874, 879 (10th Cir.1994), we hold that under the totality of the circumstances the officers had reasonable suspicion to justify detaining the briefcase for a dog sniff.

In his motion to suppress, Carhee questioned whether the officers detained the briefcase for an unreasonable period of time before they had probable cause to believe that it contained contraband. The district court found that the length of detention was reasonable, and Carhee does not challenge that finding on appeal.[4]

## II. *Lawfulness of the Search*

Carhee contends that the search of his briefcase violated the Fourth Amendment because the search warrant misstated the location of the briefcase and the warrant did not authorize a nighttime search. The district court found that the affidavit "identifies the briefcase to be searched" and that "the Judge authorized a nighttime search and ... knew that the briefcase was at his residence." R.Vol. I, Tab 22 at 4. These findings are not clearly erroneous.

The district court further held that under the circumstances the search of the briefcase was reasonable in every respect. *Id.* at 4–5. We review de novo the "ultimate determination of Fourth Amendment reasonableness." *United States v. Allen,* 986 F.2d 1354, 1356 (10th Cir.1993). We find this case similar to *United States v. Gibbons,* 607 F.2d 1320 (10th Cir.1979), in which we upheld the reasonableness of a nighttime search of a shipping trunk because the search involved no intrusion into a home, which presents a stronger case for claiming unreasonableness, and because the circumstances presented a need for immediate police action. *Id.* at 1327. We hold that under the circumstances the officers' search of the briefcase at night in the magistrate's home was reasonable. Indeed, it would have been much less reasonable and a greater intrusion on Carhee's liberty to detain him overnight so the officers could wait until daytime to search the briefcase.

## III. *Conclusion*

For the reasons stated above, the judgment of the district court is AFFIRMED.

---

4. Carhee's counsel conceded to the district court that the officers most likely had probable cause to believe the suitcase contained contraband at the time Carhee admitted he had been paid $1,000 to carry the suitcase, no questions asked, by someone in California, and that he suspected it contained narcotics. R.Vol. II at 47. This was only minutes after the officers detained the briefcase.