56 F.3d 78
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Merlin HARDISON, Defendant-Appellant.
 No. 94-6148.
 United States Court of Appeals, Tenth Circuit.
 June 1, 1995.
 
 1
 Before BALDOCK and EBEL, Circuit Judges, and O'CONNOR, Senior District Judge.[2]
 
 EBEL
 
 2
 Defendant Merlin Hardison appeals the denial of his motion to suppress four firearms that officers seized while executing a search warrant. Defendant entered a conditional guilty plea to possessing a firearm after a felony conviction in violation of 18 U.S.C. 922(g)(1), reserving his right to this appeal. Defendant contends that the warrant relied on information obtained in violation of his Fourth Amendment rights, and that the firearms should therefore be suppressed as fruits of a poisonous tree. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.
 
 BACKGROUND
 
 3
 Two experienced drug interdiction officers first noticed Defendant at Los Angeles International Airport ("LAX") when he arrived on a flight from Oklahoma City, a known narcotics source city. Los Angeles County Deputy Foster Johns and Special Agent Greg Lefante of the Drug Enforcement Agency ("DEA") approached Defendant because he matched a "drug courier profile." Agent Lefante identified himself as a DEA agent, told Defendant he was not under arrest and was free to leave, and asked if Defendant would answer a few questions.
 
 
 4
 Upon request, Defendant produced his plane ticket, in the name "Billy Johnson," which was for one-way travel and had been purchased with cash immediately before departure. During this exchange, another paper fell from Defendant's pocket, which Defendant allowed Lefante to inspect. The paper was a receipt from Greyhound Lines, Inc., indicating that a "Tony Hill" had shipped a package by bus from Oklahoma City to a "Merlin Hardison" at a Los Angeles address about one hour before Defendant's plane left Oklahoma City for Los Angeles. Defendant denied any knowledge of the receipt, the individuals, or the package to which the receipt referred.
 
 
 5
 Although Defendant lacked identification, he provided the officers an alias, "Billy Johnson," along with his date of birth and a Los Angeles address. Defendant then consented to a search of his gym-bag, which contained only clothing. Deputy Johns then realized that the address Defendant had provided was close to the recipient's address in the receipt, and again questioned Defendant about the receipt. Defendant then changed his prior responses by giving a different address and now telling the officers that Tony Hill and Merlin Hardison were his friends.
 
 
 6
 Deputy Johns left to conduct a computer check on Defendant and found no record of any kind for a "Billy Johnson" with the address and date of birth Defendant had provided. When Johns returned, Agent Lefante informed him that Defendant had admitted to a prior narcotics conviction--which the computer check should have uncovered. Because the officers believed that Defendant must therefore be using an alias and suspected that Defendant was transporting narcotics via the Greyhound bus, they moved Defendant involuntarily to the airport's task force office.
 
 
 7
 There Deputy Johns ran a new computer search with the date of birth and address Defendant had provided, but this time under the name "Merlin Hardison." The computer check revealed that Hardison, whose physical description matched Defendant's, had an outstanding warrant for a misdemeanor traffic violation. Confronted with this information, Defendant admitted that he was indeed the Merlin Hardison named in the Greyhound receipt.
 
 
 8
 Agent Lefante then contacted police officer J.D. Moore in Amarillo, Texas, told Moore what he knew about Defendant, and asked Moore to intercept the Greyhound package when the bus travelled through Amarillo on route to Los Angeles. Moore retrieved the package and a narcotics detection dog alerted to it, out of a group of boxes, on two separate trials.
 
 
 9
 Another Amarillo officer then submitted an affidavit to obtain a search warrant to open the package. The affidavit stated that: (1) Agent Lefante was detaining a suspect at LAX on a misdemeanor warrant, (2) the suspect lacked identification but had been identified as Merlin Hardison, travelling under the alias "Billy Johnson," (3) the suspect possessed a Greyhound receipt for a package shipped from Tony Hill in Oklahoma City to Merlin Hardison in Los Angeles about one hour before the suspect had flown between those cities, (4) the suspect had used "Tony Hill" as an alias in the past, (5) Agent Lefante thought the suspect was transporting narcotics by bus, and (6) a narcotics detection dog had twice alerted to the box to which the receipt referred. Based on this affidavit, a Texas magistrate issued a warrant to search the box. In the box, Texas officers discovered the four firearms at issue in this case.
 
 
 10
 Defendant moved to suppress the firearms, arguing that the Texas search warrant was tainted because the underlying affidavit contained information obtained in Los Angeles in violation of his Fourth Amendment rights. The court denied the motion, and Defendant conditionally pled guilty, reserving this appeal.
 
 DISCUSSION
 
 11
 On appeal from the denial of a motion to suppress, "we view the evidence in the light most favorable to the government and review the district court's factual findings only for clear error." United States v. Carhee, 27 F.3d 1493, 1496-97 (10th Cir.1994). We review conclusions as to when a seizure occurred, whether articulable suspicion existed, and reasonableness under the Fourth Amendment de novo. Id. at 1497. Applying these standards, we now affirm the denial of Defendant's motion, although on slightly different grounds than those articulated by the district court.
 
 
 12
 The district court correctly held that Defendant was "arrested" for Fourth Amendment purposes when he was involuntarily transported to the LAX task force office. See Florida v. Royer, 460 U.S. 491, 502-03 ("[a]s a practical matter, Royer was under arrest" when moved from an airport terminal to a small interrogation room); United States v. Cooper, 733 F.2d 1360, 1363 (10th Cir.) (characterizing arrest as "highly intrusive or lengthy search or detention"), cert. denied, 467 U.S. 1255 (1984). Like the district court, we separate the challenged facts in the affidavit into two categories for analytical purposes: those obtained before this arrest and those obtained after.
 
 
 13
 The district court first held that all the information Johns and Lefante learned prior to Defendant's arrest was lawfully obtained through a consensual encounter implicating no Fourth Amendment concerns, see id., and through a lawful Terry stop predicated on reasonable articulable suspicion, see Terry v. Ohio, 392 U.S. 1, 21 (1968). We believe, however, that the encounter remained consensual until Defendant was transported to the task force office, making the Terry analysis unnecessary. When Agent Lefante approached Defendant, he identified himself as a DEA agent and told Defendant that he was not under arrest and was free to leave; and the record provides no indication that questioning proceeded on anything other than a consensual basis. See Cooper, 733 F.2d at 1363 (describing a consensual encounter as "voluntary cooperation of a citizen in response to noncoercive questioning").
 
 
 14
 Even if the encounter did develop into a Terry stop at some point before Defendant was moved, however, we would agree with the district court that the officers possessed reasonable articulable suspicion to justify their continued questioning. Defendant matched a drug courier profile, was believed to be using an alias, provided inconsistent answers, and possessed a receipt for a package shipped to and from the very cities that Defendant flew, only one hour before Defendant's flight. Although the officers' search of Defendant's gym-bag and initial computer check of the alias given by Defendant uncovered no incriminating evidence, the officers still suspected that Defendant was transporting narcotics in the Greyhound package identified in the receipt. See United States v. Moore, 22 F.3d 241, 242-44 (10th Cir.) (finding reasonable suspicion from match with drug courier profile even though officers found no contraband in defendant's suit bag, because officers still suspected defendant's duffle bag contained narcotics), cert. denied, 115 S.Ct. 238 (1994). Accordingly, we first hold that any information discovered before Defendant was moved to the task force office was lawfully obtained, and therefore did not taint the Texas warrant by its inclusion in the underlying affidavit.
 
 
 15
 The affidavit also contained information obtained after Defendant's arrest. Defendant argues that this information was tainted because the Los Angeles officers lacked probable cause to move him to the task force office. This additional information supported assertions in the affidavit: (1) that Defendant's true identity was Merlin Hardison, the recipient named in the Greyhound receipt, (2) that he was being held on a misdemeanor warrant, and (3) that he had used "Tony Hill," the sender named in the Greyhound receipt, as an alias in the past.[3] The district court held, however, that this information was all independently derived from Deputy Johns' second computer search, not as a fruit of Defendant's arrest. Because the independent source rule eliminated any potential taint, the court held, there was no need to determine whether the officers had probable cause. See Segura v. United States, 468 U.S. 796, 804-05 (1984).
 
 
 16
 We agree that a probable cause determination is unnecessary, although we also find it unnecessary to rely on the doctrine of independent source. Instead, we hold under Franks v. Delaware, 438 U.S. 154, 156 (1978), that the information obtained after Defendant's arrest was immaterial to the finding of probable cause to issue the warrant, and therefore cannot render the warrant invalid. Even if we assume, arguendo, that this information was obtained from an arrest that violated Defendant's Fourth Amendment rights, the warrant is still valid because after that information is "set to one side," the affidavit's "remaining content" is still sufficient to establish probable cause to issue the warrant. See id. Without the three post-arrest facts, the warrant would still assert that: (1) Agent Lefante was detaining a suspect at LAX, (2) the suspect lacked identification, (3) the suspect had a Greyhound receipt for a package shipped from "Tony Hill" in Oklahoma City to "Merlin Hardison" in Los Angeles about one hour before the suspect had flown between those very cities, (4) Agent Lefante believed the suspect was transporting narcotics by bus, and (5) a narcotics detection dog had alerted to the box identified by the receipt on two independent trials. This information alone provides sufficient probable cause to support the warrant by showing "a substantial basis for finding a fair probability" that the box would contain contraband. See United States v. Hager, 969 F.2d 883, 887 (10th Cir.) cert. denied, 113 S.Ct. 437 (1992).
 
 
 17
 Thus, because the information in the affidavit was either lawfully obtained before Defendant's arrest or was immaterial to the warrant's validity, we conclude that the warrant was not tainted by fruits of a Fourth Amendment violation.[4] Accordingly, we AFFIRM the district court's denial of the Defendant's motion to suppress the four firearms discovered while executing the search.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Earl E. O'Connor, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 [3]
 Defendant also argues that the information in the Greyhound receipt should be added to this list, even though Johns and Lefante inspected the receipt and copied its contents into a notebook before Defendant's arrest. Because the officers confiscated the receipt itself only after the arrest, and because Lefante read from the receipt rather than the notebook when transmitting the receipt's contents to Agent Moore in Texas, Defendant argues that we should consider the contents of the receipt as obtained post-arrest. We find this contention unavailing, for nothing alters the fact that the information in the receipt was obtained at the airport before Defendant's arrest. Thus, the portion of the affidavit referring to the receipt's contents is governed by our analysis of pre-arrest discoveries
 
 
 [4]
 The district court held that the firearms were alternatively admissible under the good faith exception to the exclusionary rule. United States v. Leon, 468 U.S. 897 (1984). Because we affirm on other grounds, we need not address that ruling here