66 F.3d 339
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Wesley Grant CHRONISTER, Defendant-Appellant.
 No. 94-2123.
 United States Court of Appeals, Tenth Circuit.
 Sept. 15, 1995.
 
 Before TACHA, SETH and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 SETH, Circuit Judge.
 
 
 1
 This direct appeal challenges the denial of a suppression motion by the district court. Appellant Wesley Chronister pleaded conditionally guilty to possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. 841(a)(1) and (b)(1)(D), reserving his right to appeal from the district court's decision following a suppression hearing. He argues that the district court committed reversible error by finding admissible contraband discovered during a search of his vehicle at a border patrol checkpoint located on Interstate 25 near Radium Springs, New Mexico. A timely appeal was taken from the order of the district court.
 
 
 2
 Appellant and his two passengers arrived at the checkpoint in a pickup truck with a camper shell. After several brief questions by United States Border Patrol Agent Leroy Garcia regarding Mr. Chronister's citizenship, driver's license, and the truck's registration, all of which were truthfully responded to by Mr. Chronister, Agent Garcia referred Mr. Chronister to the secondary inspection area. Agent Garcia testified that he made several observations at the primary inspection area which led to his decision to refer the truck to the secondary inspection area. First, he noticed a large propane tank in the rear of the vehicle that appeared to be covered with new carpet. The new carpet extended over the bed of the pickup truck, as well as over the propane tank. In addition, Agent Garcia observed that Appellant appeared extremely nervous, in contrast to his two passengers.
 
 
 3
 At the secondary inspection area, Agent Garcia noticed that the propane tank appeared to have a fresh coat of paint, as well as new hoses coming from it. Agent Garcia requested and was granted permission to search the truck and to use a drug sniffing dog. Agent Kevin Thatcher and his dog, Herta, performed the inspection. Agent Thatcher and Herta walked around the perimeter of the truck in a counterclockwise manner. There is some dispute as to the precise sequence of events following the commencement of the canine inspection. Agent Thatcher testified that in his recollection the procedure commenced at the driver's door, and continued to the tailgate where Herta began to alert. Agent Garcia testified that the dog alerted in the cab area as well as the rear of the truck. It is clear, however, and the trial court found, that the dog alerted to the vehicle during the course of its perimeter inspection. Subsequent to Herta's alert to the truck, Herta entered the bed of the truck. At that time he again alerted, and sat near luggage contained in the bed of the truck. The agents removed all the luggage and searched every piece. No narcotics, contraband, or drug paraphernalia were found in the luggage. Following the unsuccessful search of the luggage, Herta, who had been removed from the truck while the suitcase search was conducted, was returned to the vehicle and allowed to sniff again. Herta then alerted to the propane tank, which was dismantled and found to contain marijuana.
 
 
 4
 Appellant maintains that the trial court erred by finding that there existed the requisite level of suspicion to justify the border patrol agents' detention of Mr. Chronister beyond a routine citizenship inquiry. He additionally argues that the alert by Herta to the suitcases which revealed no evidence of contraband should have resulted in the immediate release of Mr. Chronister, and further detention amounted to an illegal arrest. Finally, Appellant contends probable cause to search did not exist in light of Herta's inaccurate alert to the suitcases.
 
 
 5
 We review the denial of a motion to suppress in the light most favorable to the government, and the district court's factual findings for clear error. United States v. Carhee, 27 F.3d 1493, 1496-97 (10th Cir.). The ultimate determination of reasonableness under the Fourth Amendment is, however, reviewed de novo. United States v. Little, 18 F.3d 1499, 1503 (10th Cir.).
 
 
 6
 At the outset we examine Appellant's initial contention that there did not exist justification to question Appellant beyond the routine citizenship inquiry. It is well established that border patrol agents may briefly detain and question individuals at fixed checkpoints without any individualized suspicion that those individuals are engaged in criminal activity. United States v. Martinez-Fuerte, 428 U.S. 543, 562; United States v. Ludlow, 992 F.2d 260, 263 (10th Cir.). There is no requirement that inquiry be terminated upon verification of citizenship; rather, the purpose of an agent's questioning may clearly include concerns regarding the smuggling of contraband. United States v. Rascon-Ortiz, 994 F.2d 749, 752 (10th Cir.). In addition, as occurred here, a cursory visual inspection of the vehicle may occur. Id. Such a visual inspection may occur at the primary or secondary inspection area. It was the visual inspection that led to Agent Garcia's suspicion with regard to the propane tank.
 
 
 7
 Our review of the testimony and facts as determined by the district court leads us to agree with the court's finding that in light of the agent's identification of an apparently freshly painted propane tank with visible new hoses covered with new carpet, combined with Appellant's extreme nervousness, suspicious circumstances existed to warrant further inquiry of the vehicle's occupants. United States v. Massie, --- F.3d ----, No. 95-2030, slip op. at 8-9 (10th Cir. Sept. 11, 1995) (noting that if suspicious circumstances are observed during initial questioning, the agent may "briefly question the motorist concerning those suspicions and ask the motorist to explain") (quoting Rascon-Ortiz, 994 F.2d at 752). Even in the absence of the suspicious circumstances present in the instant case, this circuit has recognized that border patrol agents have "virtually unlimited" discretion to refer vehicles to the secondary inspection area. Massie, No. 95-2030, slip op. at 7 (quoting United States v. Sanders, 937 F.2d 1495, 1499 (10th Cir.)).
 
 
 8
 Further, the trial court found that consent was obtained to search the truck and to use a drug sniffing dog immediately upon Appellant's arrival at the secondary inspection site. Because of the existence of suspicious circumstances, and the consent freely given by Appellant to search the pickup truck, we must conclude that the border patrol agents did not illegally detain Appellant at any point prior to the search of his truck.
 
 
 9
 Appellant next contends that his continued detention following the search of his luggage, which revealed no contraband, was unreasonable and amounted to an illegal arrest. The question is thus whether Mr. Chronister should have been released after the initial alert and search revealed nothing illegal. As mentioned above, testimony by Agents Garcia and Thatcher conflicted with regard to exactly where the dog alerted, but the trial court clearly found that Herta alerted to the vehicle. We have held that a canine alert provides the probable cause necessary for searches and seizures. United States v. Ludwig, 10 F.3d 1523, 1527 (10th Cir.). Once Herta alerted to the vehicle, probable cause existed as to that vehicle and its contents. The fact that the suitcases were found to contain no contraband did not extinguish probable cause relating to the pickup truck and its remaining contents. Moreover, the testimony reflects that less than three minutes elapsed from the time the truck arrived at the secondary inspection area until Herta alerted to it. Less than seven minutes elapsed prior to direct alert to the propane tank. We conclude that the amount of time Appellant was detained did not significantly increase the level of intrusion incurred as a result of the stop.
 
 
 10
 Finally, Appellant contends that Herta's false alert to the suitcases extinguished probable cause to the vehicle in that it demonstrated Herta's unreliability. We find this argument unavailing. Despite the fact that Herta did sit next to the suitcases, which Agent Thatcher testified is the final alert which should occur in the closest proximity to the contraband as Herta can get, Herta in a preliminary way alerted to the truck, apparently near the rear bed area. We conclude that under all the circumstances of the instant stop, one false alert does not undermine Herta's reliability to the extent that it must for this court to hold that his alerts did not continue to provide probable cause. As the trial court pointed out, there is no other indication of false alerts by Herta, and thus no basis other than this apparently isolated incident to find Herta unreliable. Moreover, we note that at the time of alerts Herta was in the bed of the truck, which did contain the propane tank that hid the narcotics.
 
 
 11
 Based upon the foregoing, we AFFIRM the denial of the suppression motion by the district court.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470