I concur with the majority's opinion to the extent that it holds that the evidence presented at the suppression hearing did not establish that a seizure occurred for Fourth Amendment purposes when the police officers initially approached the appellant and put questions to him as part of a "standard field interview." There being no showing of a seizure at that point in the encounter, it was not necessary that the officers' actions up to that point be justified by a "reasonable suspicion" that the appellant had committed or was about to commit a crime. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968). Based on the evidence that was presented, there was no seizure until the officers placed the appellant under arrest and began the search of his person that led to their discovery of the cocaine in his pocket. The arrest was made and the search was initiated only after the officers had learned over the police radio that there were warrants pending for the appellant's arrest. *Page 757 
With the information that there were outstanding warrants, the officers had probable cause for an arrest. The search pursuant to the arrest was lawful, and the cocaine discovered in the appellant's pocket during that search was lawfully seized.
The appellant bore the burden of establishing whether and at what point a "seizure" occurred. See 5 W. LaFave, Search andSeizure § 11.2(b) at 44-45 (3d ed. 1996) ("The defendant also has the burden of proof as to whether there was sufficient government involvement in seemingly private conduct and whether a seizure occurred."); United States v. Carhee, 27 F.3d 1493,1496 (10th Cir. 1994) ("[the defendant] bears the burden of proving whether and when the Fourth Amendment was implicated (i.e., the point at which he or his luggage was 'seized' ")). However, the appellant appears to have assumed that the officers' actions in approaching and questioning him amounted to a seizure, and he failed to present any evidence suggesting that a reasonable person in his place would not have believed that he was free to leave. See Bush v. State, 695 So.2d 70, 123
(Ala.Cr.App. 1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, ___ U.S. ___, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997). The state did not concede the seizure question at the suppression hearing, where the prosecutor, while also maintaining that the officers were justified in stopping the appellant based onTerry's "reasonable suspicion" standard, argued that there was no indication that the officers detained the appellant when approaching and questioning him and that the evidence indicated that the appellant "could freely go" at that point. (R. 26.) The prosecutor also argued the lesson of United States v.Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497
(1980), and its progeny by insisting that "the officers have every right to approach a citizen and ask questions." (R. 27.)
Because there was an absence of evidence that a seizure occurred at any point before the officers acquired probable cause for an arrest and search of the appellant, I agree with the majority that the trial court correctly denied the appellant's motion to suppress the state's evidence.
However, I do not agree with the majority to the extent that it holds that if a Fourth Amendment seizure did occur at the point in the encounter when the officers approached and questioned the appellant, the officers were justified in making such a stop based on a reasonable suspicion. Because I do not believe that the officers presented specific articulable facts to justify an initial Terry-stop, I agree with the substance of Judge Cobb's discussion of this issue in her special writing.