917 P.2d 108 (1996)
129 Wash.2d 347
The STATE of Washington, Appellant,
v.
James M. THORN, Respondent.
No. 62560-3.
Supreme Court of Washington, En Banc.
Argued September 21, 1996.
Decided May 30, 1996.
*109 Jim Sweetser, Spokane County Prosecutor, Kevin Korsmo, Deputy, Spokane, for petitioner.
*110 Winston & Cashatt, Carl E. Hueber, Spokane, Public Defenders Office, Richard C. Fasy, Spokane, for respondent.
ROSSELLE PEKELIS, Justice, Pro Tem.[*]
The State appeals a Court of Appeals decision affirming the trial court's suppression of evidence in a prosecution for possession of a controlled substance. The trial court and Court of Appeals concluded that the evidence was obtained pursuant to an illegal seizure. We reverse.
The parties agreed to submit the case on the following stipulated facts. While on routine patrol in a marked patrol car shortly after midnight, Spokane Police Officer K. Peden observed three people seated in a car that was legally parked in the parking lot of Friendship Park in suburban Spokane. The officer also observed a flicker of light emanate from within the parked car and believed that the light was a flame being used to ignite a drug pipe. Friendship Park is not known as a high crime area and there is no indication that Officer Peden heard any drug-related conversations, smelled marijuana, or observed any overt appearance of drug intoxication on the part of the three occupants of the car.
Officer Peden stopped, exited the patrol car, and approached the parked car on foot. The officer asked the driver of the parked car, "Where is the pipe?" The stipulated facts do not reveal the manner, tone of voice, or body language of the officer in asking the question. In response to the question, the driver, James Thorn, removed a pipe from his coat pocket and handed it to Officer Peden. Peden recognized it as a pipe used to smoke marijuana and arrested Thorn for "possession of drug paraphernalia."[1] During the ensuing search incident to that arrest, Peden discovered a plastic bag containing what was subsequently determined to be psilocybin mushrooms, a controlled substance. Thorn was charged with one count of possession of a controlled substance, in violation of RCW 69.50.401(d).
Thorn moved to suppress the evidence, arguing that it was the result of an illegal stop by Officer Peden in violation of his Fourth and Fifth Amendment rights under the United States Constitution, and article I, sections 7 and 9 of the Washington Constitution.
The trial court resolved the only disputed fact in favor of Thorn, finding that Officer Peden's observations were "not so distinctive" as to make it clear that Thorn was lighting a pipe, let alone a marijuana pipe. Findings of Fact and Concl. of Law, Clerk's Papers at 36. The trial court relied on the absence of additional evidence such as the length and distance of the officer's observation, the size of the pipe, the smell of marijuana, or signs of the defendant's intoxication.
Thus, the trial court concluded that Officer Peden's actions could not be justified pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) because the officer did not have a reasonable, articulable suspicion, based on objective facts, that Thorn was involved in criminal activity. The court further concluded that Thorn had been seized when Officer Peden asked him, "Where is the pipe?" because it would be "unreasonable to believe that [Thorn] understood that he was free to leave." Findings of Fact and Concl. of Law, Clerk's Papers at 37. Consequently, the trial court suppressed evidence of the pipe, its contents, and the mushrooms. Because the court's suppression ruling effectively eliminated all evidence on which the prosecution could proceed, the trial court dismissed the case.
The State appealed the suppression order and the Court of Appeals, Division III, affirmed. We granted review to resolve only whether Thorn was seized when Officer Peden asked him, "Where is the pipe?"
*111 The Fourth Amendment protection against unreasonable searches and seizures is implicated only when an encounter between a police officer and a citizen rises to the level of a seizure. There is only one Washington case addressing whether the determination of whether a seizure has occurred is a question of fact or one of law. State v. Soto-Garcia, 68 Wash.App. 20, 24, 841 P.2d 1271 (1992). The Court of Appeals in that case stated, without discussion or citation to authority, that the determination was a question of fact. Id. However, the weight of federal authority consistently holds that the determination is more appropriately labeled a mixed question of law and fact. United States v. Dixon, 51 F.3d 1376, 1379 (8th Cir.1995); United States v. Tehrani, 49 F.3d 54, 58 (2d Cir.1995); Martinez v. Nygaard, 831 F.2d 822, 826 (9th Cir.1987); United States v. Kerr, 817 F.2d 1384, 1386 (9th Cir.1987). Cf. Thompson v. Keohane, ___ U.S. ___, ___ _ ___, 116 S.Ct. 457, 465-66, 133 L.Ed.2d 383 (1995) (holding that determination of whether defendant is in custody when interrogated is mixed question of fact and law). But see United States v. Werking, 915 F.2d 1404, 1409 (10th Cir.1990) (characterizing trial court determination of seizure as question of fact).
We agree with the view that the determination of whether a seizure has occurred is a mixed question of law and fact. The resolution by a trial court of differing accounts of the circumstances surrounding the encounter are factual findings entitled to great deference.[2]State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994) (stating that findings of fact are binding on appeal if there is substantial evidence in the record supporting the facts). However, the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo. Martinez, 831 F.2d at 826; Kerr, 817 F.2d at 1386; cf. Thompson, ___ U.S. at ___, 116 S.Ct. at 465. The trial court in this case evidently recognized this distinction, labeling its resolution of whether a seizure had occurred a "Conclusion of Law." Findings of Fact and Concl. of Law (CrR 3.6 Hearing), Clerk's Papers at 37. Thus we proceed to review de novo the trial court's conclusion that a seizure occurred.
A person is "seized" within the meaning of the Fourth Amendment of the United States Constitution only when restrained by means of physical force or a show of authority.[3]State v. Stroud, 30 Wash.App. 392, 394-95, 634 P.2d 316 (1981) (citing United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)), review denied, 96 Wash.2d 1025 (1982). A police officer does not necessarily seize a person by striking up a conversation or asking questions. Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); State v. Mennegar, 114 Wash.2d 304, 310, 787 P.2d 1347 (1990). Thus, in Bostick, the United States Supreme Court held that police officers did not necessarily seize a bus passenger by asking the defendant for identification, explaining that they were narcotics officers, and requesting to search the defendant's luggage. Bostick, 501 U.S. at 431-32, 111 S.Ct. at 2384-85. Similarly, the Court of Appeals, Division I, has held that a police officer did not seize a defendant by stating that she would like to speak with the defendant and asking him to remove his hands from his pockets. State v. Nettles, 70 Wash.App. 706, 708, 855 P.2d 699 (1993), review denied, 123 Wash.2d 1010, 869 P.2d 1085 (1994).
*112 The relevant inquiry for the court in deciding whether a person has been seized is whether a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter. Bostick, 501 U.S. at 436, 111 S.Ct. at 2387. The court must look to the totality of circumstances to determine whether a seizure has occurred. Bostick, 501 U.S. at 437, 111 S.Ct. at 2387-88; State v. Toney, 60 Wash.App. 804, 806, 810 P.2d 929 (looking to "particular, objective facts surrounding the encounter"), review denied, 117 Wash.2d 1003, 815 P.2d 266 (1991).
In concluding that a seizure occurred, the Court of Appeals relied on the fact that Thorn was in a parked car at the time the question was asked, reasoning that "[t]o end the encounter, Mr. Thorn would have had to either start the engine and drive away or would have had to open the driver's door, exit the vehicle and walk away." State v. Thorn, No. 13340-1-III, slip op. at 5 (Wash. App. Dec. 22, 1994). We reject this rationale.
First, as federal courts have recognized, this increased difficulty in leaving is arguable at best. See United States v. Kim, 25 F.3d 1426, 1430 (9th Cir.) (stating that distinction between stopping pedestrian and person in car dissipates when car is parked in public place), cert. denied, ___ U.S. ___, 115 S.Ct. 607, 130 L.Ed.2d 517 (1994). Moreover, as the Bostick court pointed out, the focus of the inquiry is not on whether the defendant's movements are confined due to circumstances independent of police action, but on whether the police conduct was coercive. Bostick, 501 U.S. at 436, 111 S.Ct. at 2387. Finally, as outlined above, the question is not merely whether Thorn felt free to leave, but whether he felt free to terminate the encounter, refuse to answer the officer's question, or otherwise go about his business. Consequently, whether it was more difficult for the defendant to actually leave the scene of the police contact because he was in a parked car is not a significant factor here. See INS v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984) (holding that no seizure took place where INS agents interrogated suspected aliens at their workplace despite the fact that the workers may have felt not free to leave because they were at work).
Instead, we must return to the established test of looking to the totality of circumstances surrounding the encounter to determine whether a seizure occurred. The problem inherent in a case such as this one, presented on limited stipulated facts, is that the encounter is capable of varying interpretations. For example, did the officer approach and ask in a pleasant or joking tone of voice where the pipe might be or did the officer stride forcefully toward the car, impliedly demanding that Thorn respond? From the bare facts of the stipulation, we know only that the officer asked a question. Thorn presented no facts about the encounter on which to base a determination that the circumstances were such that a reasonable person would not feel free to ignore the question. If there was something about the question, or the manner in which it was asked, that was coercive, there was insufficient evidence for the trial court to ascertain this. Hence, we reject the trial court's implicit conclusion that the question itself, as a matter of law, created a coercive environment such that Thorn reasonably believed that he could not leave.
Our holding should not be construed as a blanket rule that an officer does not seize a person merely by asking a question. However, where the question is, as here, capable of more than one interpretation, it does not per se constitute a "seizure." The burden of proving that a seizure occurred is on Thorn. See 5 Wayne R. LaFave, Search and Seizure § 11.2(b), at 44-45 (3d ed.1996) (citing United States v. Carhee, 27 Fed.3d 1493 (10th Cir.1994); Russell v. State, 717 S.W.2d 7 (Tex.Crim.1986)).[4]
We remand to the trial court for trial.
*113 DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN and TALMADGE, JJ., concur.
SANDERS, J., did not participate.
ALEXANDER, Justice (dissenting).
This case presents the following issue: Was James Thorn "seized" when Spokane Police Officer Peden walked up to Thorn, who was seated in his car, and asked him, "Where is the pipe?" Clerk's Papers at 35. That question, if asked in an accusatory manner, might well constitute a seizure, because a reasonable person upon hearing it could have "believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, reh'g denied, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980)). On the other hand, the same question, if asked in a nonadversarial tone, might not constitute a seizure.
Significantly, the majority has no facts upon which to reach its determination that the superior court and the Court of Appeals, Division Three, erred in concluding that Officer Peden's contact with Thorn was a seizure. Indeed, it is the complete absence of facts concerning the manner in which the question was asked that makes it impossible for any court to reach a conclusion that the contact between Officer Peden and the Defendant was a seizure, or that it was not.[1] This case, therefore, ultimately turns on whether Thorn had the burden, at the outset, to prove that a seizure occurred, or whether his initial burden was simply to challenge the officer's actions, and point to evidence that the officer was acting without benefit of a warrant.
In my opinion, the latter describes Thorn's burden. Furthermore, I believe Thorn met this burden by effectively characterizing Officer Peden's statement as a demand for incriminating evidence, and calling attention to the fact that Peden was not in possession of a warrant. The issue having thus been raised, the burden of proof shifted to the State to show either that a seizure did not occur, or that the seizure was justified notwithstanding the absence of a warrant. The State, in this case, did not, and, on this record, could not rebut Thorn's assertion that a seizure had occurred, nor could it show that the officer's actions were within any of the recognized exceptions to the warrant requirement. Consequently, I would affirm the trial court's suppression order. I, therefore, dissent.
Despite the limited factual presentation at the suppression hearing, the evidence relating to Officer Peden's initial contact with Thorn was sufficient to convince the trial judge that a seizure had occurred.[2] That ruling was consistent with a decision of the United States Supreme Court that, like the case before us, turned on a determination of whether, and when, a seizure had occurred. See California v. Hodari D., 499 U.S. 621, 624, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). In that case, the Court said that a seizure requires either physical force "or, where that is absent, submission to the assertion of authority." Hodari, 499 U.S. at 626-27, 111 S.Ct. at 1550-51 (quoting with approval Rollin M. Perkins, The Law of Arrest, 25 Iowa L.Rev. 201, 206 (1940)).[3] The *114 majority overlooks the fact that when Officer Peden asserted his authority by approaching the car and asking, "Where is the pipe?" and Thorn submitted to Peden's implied demand, a seizure, as defined in Hodari, had occurred, thus providing a basis for sustaining the trial court's suppression order.
Most significantly, though, the majority criticizes the trial court for failing to recognize what it indicates is the dispositive principle in this case: that the burden of proving that a seizure occurred is on the defendant. Majority Op. at 112 (citing United States v. Carhee, 27 F.3d 1493 (10th Cir.1994); Russell v. State, 717 S.W.2d 7 (Tex.Crim.App. 1986)). While that principle was correctly applied in the cases from other jurisdictions cited by the majority, it is not, in my judgment, applicable here. Indeed, those cases provide support for the position I am advancing in this dissent.
In Carhee, a Drug Enforcement Administration (DEA) agent and an Oklahoma City police officer, acting on a tip from DEA agents in Los Angeles, approached the defendant, Carhee, after he disembarked from a commercial flight and was waiting for a taxi outside the Oklahoma City airport. The officers identified themselves to Carhee and asked to speak to him. They then questioned him about his travels, ultimately receiving his permission to search his luggage. Carhee, 27 F.3d at 1495. Carhee contended that he had been seized "`as soon as the officers hailed him.'" Carhee, 27 F.3d at 1497 (quoting Appellant's Br. at 9). The trial court rejected this contention, concluding that Carhee had not shown that the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. Carhee, 27 F.3d at 1497 (citing Florida v. Bostick, 501 U.S. 429, 436, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389 (1991)). The Tenth Circuit Court of Appeals agreed, and affirmed the trial court's order denying Carhee's suppression motion.
Although, as the majority has noted, the Court of Appeals stated that "[a]s to the warrantless encounter, Carhee bears the burden of proving whether and when the Fourth Amendment was implicated (i.e., the point at which he or his luggage was `seized') [,]" it also pointed out that the defendant need only make a prima facie showing that the Fourth Amendment is implicated in order to meet that burden. Carhee, 27 F.3d at 1496 (citing United States v. Crocker, 510 F.2d 1129, 1135 (10th Cir.1975)). In Carhee, the defendant did not make such a showing, failing even to allege that the officers acted in a manner that could be described as threatening, intimidating, or asserting their authority.
Here, on the other hand, there was evidence presented to the trial court that the officer not only did not attempt to engage in any dialogue, friendly or otherwise, with Thorn, but instead initiated contact with Thorn by making what amounted to a demand for incriminating evidence. This showing, in my view, satisfied Thorn's initial burden of challenging the officer's action as a warrantless seizure, thus implicating the Fourth Amendment and shifting the burden to the state to prove either that a seizure did not occur, or that the warrantless seizure was justified.
Similarly, the other case cited by the majority, Russell v. State, does not support the proposition that the burden of proving that a seizure occurred always remains with the defendant. Rather, the opinion in that case seems to imply otherwise:
When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, ... the burden of proof [is] initially upon the defendant. As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State. A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant.
Russell, 717 S.W.2d at 9 (emphasis added; citations omitted; footnote omitted). In Russell, the defendant "offered no evidence that she was physically threatened or restrained, verbally intimidated, or otherwise *115 compelled" to the extent that a reasonable person would have felt unable to terminate the encounter with the police. Russell, 717 S.W.2d at 11. The Texas Criminal Court of Appeals in that case declined to resort to "indulging in speculation" and decided the question of whether a seizure occurred based solely upon the evidence in the record. On that record, the court concluded that "no Fourth Amendment seizure has been established." Russell, 717 S.W.2d at 11.
In contrast to the facts in Russell, here there was some evidence presented that tended to support a conclusion that Thorn could have felt "verbally intimidated" by the officer's question, "Where is the pipe?" and thus unable to freely terminate the encounter. See Russell, 717 S.W.2d at 11. In addition, because Officer Peden was acting without benefit of a warrant, there was no presumption that his action was based on probable cause. See Rogers v. United States, 330 F.2d 535, 542-43 (5th Cir.) ("While an arrest pursuant to a warrant is prima facie evidence of probable cause, the prosecutor should be forced to come forward with evidence of probable cause in the absence of a warrant." (citations omitted)), cert. denied, 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964). The Fifth Circuit Court of Appeals's reasoning in Russell, therefore, clearly supports the notion that in a case such as the instant, where a seizure is not justified by a warrant, the burden of proof does not remain with the moving party. Rather, once a defendant claims, and offers some evidence that he or she was seized or searched, the burden shifts to the State to show that the seizure or search falls within the narrowly defined exceptions to the warrant requirement of the Fourth Amendment. See State v. Talley, 14 Wash.App. 484, 490, 543 P.2d 348 (1975) ("Once challenged, a warrantless entry requires that the state bear the burden of demonstrating the officers were lawfully present upon the premises.").[4]
This concept of "shifting" burdens of persuasion and production in a suppression hearing was discussed in the case of United States v. Al-Azzawy, 784 F.2d 890 (9th Cir. 1985), cert. denied, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986), cited with approval in United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1295, 1299 (9th Cir. 1988). The district court in Al-Azzawy suppressed unregistered firearms and explosive devices that were seized during a warrantless search of the home where the defendant was staying. The government contended on appeal in Al-Azzawy that the district court erred in finding that the search was not justified by exigent circumstances. The Ninth Circuit reversed the district court's order excluding the evidence and remanded for trial. Significantly, the Court of Appeals concluded that though the case against Al-Azzawy had not yet surpassed the suppression hearing stage, it was the government's burden to show that the defendant's challenge to the search was legally or factually unsupported. Al-Azzawy, 784 F.2d at 895.
Similarly, in United States v. Shugart, 889 F.Supp. 963 (E.D.Tex.1995), the court employed a shifting burden analysis. In Shugart, agents of the Drug Enforcement Administration seized and searched a package addressed to the defendant. The federal district court in that case suppressed the evidence seized after the search of the package because neither the defendant, nor his wife, had consented validly to the search. It summarized its analysis as follows:
Generally, the burdens of production and persuasion rest upon the movant in a suppression hearing. United States v. De La Fuente, 548 F.2d 528, 533 (5th Cir.), cert. denied, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977), and cert. denied, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 *116 (1977). However, if a defendant produces evidence that a search was conducted and evidence seized without a warrant, the burden shifts to the government to justify the warrantless search and seizure. Id.; United States v. Pena, 961 F.2d 333, 338-39 (2nd Cir.1992). Here, the burden has shifted to the government, because the search of [the allegedly unlawfully searched package] was conducted without a warrant.
In order to satisfy its burden, the government must show that the consent to search was freely and voluntarily given, see Bumper v. North Carolina, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 1791-92, 20 L.Ed.2d 797 (1968).
Shugart, 889 F.Supp. at 981.
Thorn's situation is comparable to Shugart's in that Thorn and his pipe were allegedly seized by agents of the government without the benefit of a warrant. Thorn, having raised the issue of warrantless seizure, has satisfied his burden and the burden, therefore, shifted to the State to show either that there was no seizure, or, alternatively, that the production of the pipe was voluntarily given, or otherwise the result of a proper warrantless search. Given only the limited facts of the stipulation in this case, it is impossible for the State to show either, and thus it cannot satisfy its burden. The majority, therefore, should not have reversed the trial court. Rather, it should have affirmed the order dismissing the case.
JOHNSON, J., concurs.
NOTES
[*] Justice Rosselle Pekelis is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend. 38).
[1] It is a misdemeanor to use drug paraphernalia or to possess drug paraphernalia with intent to deliver. RCW 69.50.412(1), (2). Thorn does not raise an issue regarding the statutory basis for his arrest.
[2] We note also that although findings of fact in a suppression hearing are entitled to great deference on appeal, where, as here, the trial court did not hear oral testimony but made findings based solely on stipulated facts, there is no reason to defer to the judgment of the trial court, and we review the factual findings de novo. State v. Rowe, 93 Wash.2d 277, 280, 609 P.2d 1348 (1980). However, because the findings of fact are not challenged in this case, the degree of deference is irrelevant.
[3] Thorn also argues that article I, section 7 of the Washington Constitution provides greater protection than the Fourth Amendment of the U.S. Constitution. We decline to reach this issue as the mere mention of the state constitution, without briefing upon the factors set out in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), is insufficient to require this court to independently construe a state constitutional provision. Clark v. Pacificorp, 118 Wash.2d 167, 192, 822 P.2d 162 (1991).
[4] The cases cited by the dissent address the issue of who has the burden of showing that an exception to the rule against warrantless seizures applies. Here, the issue is not whether an exception applies but whether a seizure has occurred in the first instance.
[1] The only evidence presented at the suppression hearing in this case was a stipulation as to the facts, based on the arresting officer's report. The stipulation referred as often to what the report did not contain as it did to what the report did say, and, significantly, made no reference to the manner in which the question, "Where is the pipe?" was asked.
[2] When grounds exist upon which a trial court's decision granting a defendant's motion to suppress can be properly sustained, it is incumbent upon this, or any reviewing court, to do so. State v. Ellis, 21 Wash.App. 123, 124, 584 P.2d 428 (1978). See also State v. Maxfield, 125 Wash.2d 378, 385, 886 P.2d 123 (1994) (citing State v. Hill, 123 Wash.2d 641, 644-46, 870 P.2d 313 (1994)); accord State v. Carner, 28 Wash. App. 439, 624 P.2d 204 (1981) (When the state appeals from an order suppressing evidence, there is no fundamental constitutional right involved which requires an independent evaluation of the evidence; accordingly, the Court of Appeals will apply the usual substantial evidence test to evaluate those disputed findings.).
[3] Although the quoted language refers to "an arrest," the Supreme Court in Hodari was addressing only a question of whether "a seizure" had occurred, and characterized an arrest as "the quintessential `seizure of the person' under our Fourth Amendment jurisprudence." Hodari, 499 U.S. at 624, 111 S.Ct. at 1548-50.
[4] The majority appears to discount these cases, on the grounds that they "address the issue of who has the burden of showing that an exception to the rule against warrantless seizures applies" rather than the issue of "whether a seizure has occurred in the first instance." Majority Op. at 112 n. 4. In making that observation, the majority, in my opinion, relies on a distinction without a difference. The precise question we face in this case in one of first impression in this jurisdiction, and we thus must rely on analogous circumstances. Even in other jurisdictions, as the cases cited by the majority indicate, "the burdens of persuasion and of producing evidence in motions for the suppression of evidence have been badly confused." Rogers, 330 F.2d at 542. Coincidentally, Rogers is one of the cases relied upon by Russell.