IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30757-3-III |
| Respondent, | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CARL D. JOHNSON, | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Carl D. Johnson showed up to a Special Weapons and Tactics (SWAT) raid and would not leave despite being free to go. He remained at the site, voluntarily spoke with officers, and admitted to having a controlled substance in his possession. A subsequent search of his vehicle yielded a small amount of methamphetamine. This appeal challenges the denial of his motion to suppress the methamphetamine. We affirm.

## FACTS

In the morning hours of July 21, 2011, Mr. Johnson drove up the driveway of a property where law enforcement was in the middle of executing a search warrant. Mr.

Johnson did not immediately see the officers. The officers, however, did see him. One of the officers then approached Mr. Johnson's vehicle in order to learn his purpose. Mr. Johnson responded that he was there for business purposes, at which point the officer cleared him to leave.

When Mr. Johnson did not leave, two other officers approached his vehicle. One of them, Detective Joshua Mathena, recognized Mr. Johnson from previous encounters and spoke with him. During the course of this conversation, the detective asked if Mr. Johnson had any drugs in his vehicle. Mr. Johnson responded that he might have some marijuana and a pipe.

The detective then asked Mr. Johnson to step out of the vehicle and requested permission to search the vehicle. Also at this time the detective read Mr. Johnson his *Ferrier*[1] warnings. Mr. Johnson asked if he could refuse consent. Detective Mathena said that Mr. Johnson could refuse consent, but told him that he believed he had enough information to establish probable cause for a search warrant. Mr. Johnson then consented to a search of his vehicle. The search yielded a small amount of methamphetamine.

The State thereafter charged Mr. Johnson with one count of possession of a controlled substance: methamphetamine. Mr. Johnson sought suppression of the methamphetamine as the fruit of an unlawful search. The trial court denied the motion

---

[1] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

2

No. 30757-3-III
*State v. Johnson*

and Mr. Johnson proceeded to a bench trial. After the court found him guilty, Mr. Johnson timely appealed to this court.

## ANALYSIS

Mr. Johnson presents two issues for review. He argues that his consent was not voluntary because he had been unlawfully seized prior to telling the detective that he might have drugs in the vehicle. Second, he argues that his consent was not voluntary because of the detective's statement about getting a warrant was coercive. We address both of these issues in turn.[2]

Under article 1, section 7, of the Washington State Constitution, a person is seized when by means of physical force or show of authority his or her freedom of movement is restrained and a reasonable person would not have believed he or she is (1) free to leave, given all the circumstances, or (2) free to otherwise decline an officer's request and terminate the encounter. *State v. O'Neill*, 148 Wn.2d 564, 574, 62 P.3d 489 (2003). The question of whether a seizure occurred is a mixed question of law and fact. We review the underlying factual circumstances for substantial evidence, but review de novo the ultimate determination of whether the circumstances amount to a seizure under the law. *State v. Harrington*, 167 Wn.2d 656, 662, 222 P.3d 92 (2009).

---

[2] Mr. Johnson presents additional arguments in his statement of additional grounds, which we decline to review as meritless.

3

In this case it is undisputed that Mr. Johnson was seized when Detective Mathena asked him to step out of the vehicle. It is further undisputed that this seizure was lawful following Mr. Johnson's admission that he might have marijuana in the vehicle. The question that Mr. Johnson presents is whether he was actually seized earlier at the point when Detective Mathena asked him the question about the drugs. Mr. Johnson argues that this question combined with the surrounding circumstances constituted a seizure that triggered the detective's duty to read Mr. Johnson his *Miranda*[3] rights. If the seizure occurred at that point then Mr. Johnson's answer to the detective's question would have to be suppressed, which in turn would eliminate the detective's probable cause to seek permission to search the vehicle.

The State counters that the question was merely part of a social contact that had not yet ripened to a seizure. We agree.

In *O'Neill*, the court held that an officer who asks for identification from a person sitting in a parked car does not seize the person even if the officer suspects illegal activity. *O'Neill*, 148 Wn.2d at 579. On the opposite end of the spectrum is *Harrington*, where the court held that a request to frisk a person constitutes a seizure. *Harrington*, 167 Wn.2d at 669-70.

Toward the middle of those two cases lie *Thorn, Soto-Garcia*, and this case. In *Thorn*, the court concluded that asking a question about illicit activity does not constitute

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966).

a seizure unless there was something coercive in the way the question was asked. *State v. Thorn*, 129 Wn.2d 347, 354, 917 P.2d 108 (1996) (holding that the question, "Where is the pipe," was not a seizure), overruled on other grounds by *O'Neill*, 148 Wn.2d at 571. However, in *Soto-Garcia* it was implied that asking a person on the street if he had cocaine on his person was a seizure. *State v. Soto-Garcia*, 68 Wn. App. 20, 25, 841, P.2d 1271 (1992).

Mr. Johnson argues that his case is closer to *Soto-Garcia* than *Thorn*. However, he ignores an important limitation in *Soto-Garcia*. When the Washington Supreme Court later interpreted *Soto-Garcia* in *Harrington*, it noted that the seizure occurred at the point when the officer asked to search the defendant and that the question about the drugs was just part of the combined acts that aggregated to ripen the contact into a seizure. *Harrington*, 167 Wn.2d at 668.

Reviewing all the circumstances in this case we agree that there was no seizure at the point that Detective Mathena asked Mr. Johnson if he had any drugs. Mr. Johnson was questioned by two officers who were part of a larger SWAT raid. Mr. Johnson voluntarily drove to the location while the raid was in progress; he was at all times safely inside his vehicle and only on the edge of the property that was the subject of the police search. Furthermore, there is no evidence that Mr. Johnson's vehicle was blocked in, that he was surrounded, or that he was being held at gunpoint. Mr. Johnson had also been explicitly cleared to leave. Finally, there is no evidence that Detective Mathena asked the

5

question in a coercive manner. Given all the circumstances, a reasonable person in Mr. Johnson's circumstances would feel free to terminate the second encounter.

Next, Mr. Johnson argues that the detective's statement about having probable cause to get a warrant rendered his consent involuntary. An officer cannot obtain consent through use of an unlawful threat. *O'Neill*, 148 Wn.2d at 589-90. However, an officer's statement that he would seek a warrant if the defendant did not consent is not an unlawful threat. *State v. Smith*, 115 Wn.2d 775, 790, 801 P.2d 975 (1990). Accordingly, the detective's response to Mr. Johnson's question did not invalidate his consent.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____     _____
Brown, J.                                            Siddoway, J.

6