**FILED**
**June 25, 2015**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32219-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADRIAN PIMENTAL, Jr., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

BROWN, J. — Adrian Pimental, Jr. appeals the juvenile court's adjudication of guilt for second degree unlawful possession of a firearm. He appeals, contending the court erred in denying his CrR 3.6 motion to suppress a firearm located on the backseat of a vehicle he was a passenger in. We find no error and affirm.

## FACTS

The facts are derived from the court's largely unchallenged CrR 3.6 findings of fact that are therefore, verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Disputed is finding of fact 7: "Based on their observations the police have reason to believe that criminal activity has occurred or is about to occur and have an obligation to investigate that situation further." Clerk's Papers (CP) at 3.

During the evening of December 11, 2013, Yakima Police Officers Efren Morfin and Dulce Diaz were patrolling a high crime area known for gang activity. The officers

noticed a vehicle parked diagonally in an apartment complex parking lot with multiple occupants inside. The officers viewed this as suspicious because it was cold outside. The officers pulled in, but stopped short of the driveway into the complex. Officer Morfin activated his red and blue flashing lights on the rear of the patrol car to prevent another vehicle from running into the back of the patrol car.

Officers shined a spotlight at the parked vehicle. The spotlight illuminated one person standing outside the car who immediately ran into a nearby apartment. Another person got out of the front passenger's seat and ran into the apartment holding something in front of him while he ran, that the officers believed was consistent with a firearm. Two other people, one of whom was Mr. Pimental, remained sitting in the backseat. Officer Morfin testified both men were reaching down for something on the floor. Officer Diaz testified they were looking back and forth and appeared nervous.

Officer Morfin got out of the patrol car, drew his gun, approached the right rear car door, and ordered Mr. Pimental and the other occupant to put their hands on the back of the headrest in front of them. Officer Morfin then ordered the men out of the vehicle as a safety precaution given the furtive movements. As the backseat passengers exited the vehicle, Officer Morfin noticed a small pistol on the backseat behind a child car seat.

Because Mr. Pimental had a prior felony conviction, the State charged him with second degree unlawful possession of a firearm. Mr. Pimental requested to suppress the evidence under CrR 3.6, as the product of an unlawful search and seizure. The

2

court denied the motion, finding the officers had "reason to believe that criminal activity has occurred or is about to occur and have an obligation to investigate the situation further." CP at 3 (Finding of Fact 7). The court concluded the officers' safety concerns were a permissible basis for the stop. The court found Mr. Pimental guilty as charged. He appealed.

## ANALYSIS

The issue is whether the trial court erred by denying Mr. Pimental's CrR 3.6 motion to suppress evidence obtained from inside the vehicle. He contends the evidence was fruit of the poisonous tree based on an unlawful search and seizure.

We review a trial court's decision on a motion to suppress to determine whether the findings are supported by substantial evidence and whether those findings, in turn, support the conclusions of law. *O'Neill*, 148 Wn.2d at 571. Unchallenged findings of fact are verities on appeal. *Id.* at 571. We review conclusions of law de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996).

Under the Washington Constitution, article I, section 7: "No person shall be disturbed in his private affairs . . . without authority of law." Mr. Pimental bears the burden of establishing that a seizure occurred in violation of article I, section 7. *State v. Harrington*, 167 Wn.2d 656, 664, 222 P.3d 92 (2009). Under article I, section 7, a person is "seized" when by means of physical force or show of authority, his or her freedom of movement is restrained and a reasonable person would not have believed he or she is (1) free to leave, given all the circumstances, or (2) free to otherwise

3

decline an officer's request and terminate the encounter. *O'Neill*, 148 Wn.2d at 574.

This standard is "a purely objective one, looking to the actions of the law enforcement

officer." *State v. Young*, 135 Wn.2d 498, 501, 957 P.2d 681 (1998). Police actions that

will likely result in a seizure include, "'[T]he threatening presence of several officers, the

display of a weapon by an officer, some physical touching of the person of the citizen, or

the use of language or tone of voice indicating that compliance with the officer's request

might be compelled.'" *Young*, 135 Wn.2d at 512 (quoting *United States v. Mendenhall*,

446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

A "social contact" does not amount to a seizure. *Harrington*, 167 Wn.2d at 664-

65. A social contact is a type of interaction that "occupies an amorphous area . . .

resting someplace between an officer's saying 'hello' to a stranger on the street and, at

the other end of the spectrum, an investigative detention." *Id.* at 664. Without more,

engaging an individual in conversation in a public place does not raise the encounter to

an investigatory detention requiring an articulable suspicion of wrongdoing. *Young*, 135

Wn.2d at 511; *State v. Ellwood*, 52 Wn. App. 70, 73, 757 P.2d 547 (1988). Likewise, no

seizure occurs when an officer approaches a parked car, asks an occupant to roll the

window down, and asks questions or asks for identification. *See, e.g., O'Neill*, 148

Wn.2d at 579-81 (occupant not seized when officer asked him to roll down the window,

asked him to try to start his vehicle, then asked for identification); *State v. Mote*, 129

Wn. App. 276, 292, 120 P.3d 596 (2005) (no seizure when officer asked occupants of a

parked car what they were doing and for identification). The focus is not on whether the

4

defendant's movements are confined due to circumstances independent of the police action, but on whether the police conduct was coercive. *State v. Thorn*, 129 Wn.2d 347, 353, 917 P.2d 108 (1996), *overruled on other grounds by O'Neill*, 148 Wn.2d at 571.

The question of whether police conduct amounts to a seizure is a mixed question of law and fact. *Harrington*, 167 Wn.2d at 662. We give great deference to the trial court in resolving the facts, but the ultimate determination of whether those facts constitute a seizure we review de novo. *Thorn*, 129 Wn.2d at 351.

The Supreme Court decision in *O'Neill* is analogous. In *O'Neill*, an officer approached a car parked in front of a store that was closed and had been recently burglarized. 148 Wn.2d at 571-72. The officer pulled up behind the car, activated his spotlight, and ran a computer check on the license plate. The officer learned that the car had been impounded within the last two months. *Id.* at 572. The windows of the car were fogged up, leading the officer to believe someone was in the car. The officer walked up to the driver's side door, shined his flashlight in the driver's face, and asked him to roll down the window. *Id.* After some discussion about what the driver was doing there, the officer asked for identification. The driver, Mr. O'Neill, said he had no identification and his license had been revoked, and gave the officer a name that turned out to be false. *Id.* The officer asked O'Neill to step out of the vehicle, and subsequent events led to O'Neill's arrest. *Id.* at 572-73.

The court held under article I, section 7, Mr. O'Neill was not seized until he was asked to step out of the vehicle. *O'Neill*, 148 Wn.2d at 574. The court "reject[ed] the

5

premise that under article I, section 7 a police officer cannot question an individual or ask for identification because the officer subjectively suspects the possibility of criminal activity, but does not have a suspicion rising to the level to justify a *Terry*[1] stop." *Id.* at 577. The court concluded that before that point, the officer did not use physical force nor display any show of authority. *Id.* at 577-78. The court observed, "The reasonable person standard does not mean that when a uniformed law enforcement officer, with holstered weapon and official vehicle, approaches and asks questions, he has made such a show of authority as to rise to the level of a *Terry* stop." *Id.* at 581.

Likewise, in *Mote*, a police officer approached two people who sat in a car legally parked on a residential street late at night. The taillights and the interior lights of the car were on. *Mote*, 129 Wn. App. at 279-80. The officer parked behind the vehicle, approached the driver's-side window, and asked for identification from both occupants, who complied. *Id.* at 280-81. The court held even assuming that the officer used a spotlight when he approached the car, his actions would not constitute a seizure at that point. *Mote*, 129 Wn. App. at 292.

Here, several individuals sat in a parked car on a cold night in a high crime gang area. Officers pulled up near the vehicle, but not blocking it. Officers activated their rear emergency lights to avoid a rear-end collision and turned on their front spotlight. Instantly after turning on the spotlight, occupants started to flee, before officers exited their vehicle. One fleeing suspect appeared to be concealing a firearm. Officers then

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

saw Mr. Pimental and the other passenger making furtive movements, looking back and forth, and appearing nervous. Officer Morfin approached and asked the occupants to exit the vehicle at which point a gun was seen in open view.

Under both *O'Neill* and *Mote*, the officers' initial encounter was lawful. When individuals began fleeing the scene, one running as if he was hiding something believed to be a firearm, and two remaining in the vehicle but making suspicious movements, the stop elevated to a valid *Terry* stop. The purpose of a *Terry* stop is to allow the police to make an intermediate response to a situation for which there is no probable cause to arrest but which calls for further investigation. *State v. Armenta*, 134 Wn.2d 1, 16, 948 P.2d 1280 (1997). To justify a *Terry* stop, the police officer must identify specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion. *Terry*, 392 U.S. at 21. The scope of a lawful investigatory stop is not exceeded simply because an officer orders the suspect out of a car. *State v. Watkins*, 76 Wn. App. 726, 729, 887 P.2d 492 (1995). In *Watkins*, the officers did not exceed the scope of a lawful *Terry* stop by ordering the defendant from a car because they had valid concerns about their safety after seeing him lean forward as if to place something under the seat. 76 Wn. App. at 728, 730.

Here, the officers had similar safety concerns based on Mr. Pimental's and the other occupant's actions. Ordering individuals out of a vehicle based on safety concerns does not exceed the scope of a *Terry* stop. *Watkins*, 76 Wn. App. at 728, 730. Moreover, we are reluctant to substitute our judgment for that of police officers in

7

the field in assessing their fear for their personal safety when confronting unknown persons during a stop. *State v. Belieu*, 112 Wn.2d 587, 600, 773 P.2d 46 (1989).

"[N]o single rule can be fashioned to meet every conceivable confrontation between police and citizen . . . . [E]ach case must be considered in light of the particular circumstances facing the law enforcement officer." *State v. Lesnick*, 84 Wn.2d 940, 944, 530 P.2d 243 (1975). The occupants' actions clearly warranted further intrusion for officer safety. Thus, both the initial social contact and the elevated *Terry* stop were valid.

Because the stop was valid, the gun is admissible under the open view doctrine. The "open view" exception applies to an officer's observation from a nonconstitutionally protected area. *State v. Seagull*, 95 Wn.2d 898, 901-02, 632 P.2d 44 (1981). Under the open view doctrine, when an officer observes evidence from a nonconstitutionally protected area, article I, section 7 is not implicated. *State v. Kennedy*, 107 Wn.2d 1, 10, 726 P.2d 445 (1986). "[I]f an officer, after making a lawful stop, looks into a car from the outside and sees a weapon or contraband in the car, he has not searched the car. Because there has been no search, article [I], section 7 is not implicated. Once there is an intrusion into the constitutionally protected area, article [I], section 7 is implicated and the intrusion must be justified if it is made without a warrant." *Id.*

Based on the above, the trial court did not err in denying Mr. Pimental CrR 3.6 motion to suppress.

Affirmed.

8

No. 32219-0-III
*State v. Pimentel*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

Brown, J.

WE CONCUR:

Siddoway, C.J.

Korsmo, J.

9