Anton **MAJAEV**, Petitioner,

v.

**STATE of Alaska**, Respondent.

No. S–13033.

Supreme Court of Alaska.

Jan. 22, 2010.

Charles E. Tulin, Anchorage, for Petitioner.

Terisia K. Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, and Richard A. Svobodny, Acting Attorney General, Juneau, for Respondent.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

FABE, Justice.

## I. INTRODUCTION

After arriving at the site of a party where underage drinking was suspected, Alaska State Trooper Travis Bordner approached a vehicle driven by Anton Majaev. Majaev pulled away to leave the scene but stopped when he saw the trooper walk into the road to look at the license plate of Majaev's truck. Trooper Bordner waved Majaev back, and Majaev complied with this direction by backing up to speak with the officer. At that time, Trooper Bordner found reason to conduct field sobriety tests, which Majaev subsequently failed. Majaev was charged with driving under the influence and moved to dismiss the case against him on the grounds that he was illegally seized in violation of both the United States Constitution and the Alaska Constitution. The district court denied his motion, and the court of appeals affirmed this denial on the basis that no seizure occurred. We conclude that a reasonable person in Majaev's position would not have felt free to leave the scene because doing so would have violated the law and that, therefore, a seizure occurred. Accordingly, we reverse the decision of the court of appeals that no seizure occurred and remand for a determination by the district court regarding whether Trooper Bordner had reasonable suspicion to seize Majaev.

## II. FACTS AND PROCEEDINGS

On the evening of October 10, 2004, Alaska State Trooper Travis Bordner responded to a report that a property owner planned to break up an underage party at a gravel pit in Homer. Before Trooper Bordner reached his destination, he saw the property owner

returning from the gravel pit. The property owner told Trooper Bordner that the young people who had gathered there were in the process of leaving. While Trooper Bordner and the property owner were talking, a couple drove up and reported their belief that young people were drinking at a turnout about a mile up the road.

Trooper Bordner was familiar with this particular turnout and recalled that there had been underage parties in that area in the past. He drove to the turnout and observed twenty to thirty people in the area who appeared to be in their mid-teens to mid-twenties. When the group of people saw the marked police vehicle approaching, they scattered into the woods nearby. Trooper Bordner, who was in uniform, parked his patrol vehicle about ten feet away from the driver's side door of Anton Majaev's truck.

Majaev drove away "in a hurried manner" when Trooper Bordner walked toward him. When Trooper Bordner stepped into the road to see the license plate on Majaev's truck, the truck stopped about thirty to fifty feet away from the trooper. Trooper Bordner realized that Majaev could see him in the driver's side mirror, so the trooper "wave[d] him back to talk to him." When Majaev saw Trooper Bordner beckoning for him to come back, he backed up and rolled down his window. At that time, Trooper Bordner smelled alcohol and saw beer cans in the back of the truck. Majaev failed the field sobriety tests administered to him by Trooper Bordner and was transported to the Homer Police Station, where he provided a breath sample that contained 0.120 alcohol content.

Majaev was charged with driving under the influence in violation of AS 28.35.030(a). Majaev moved to suppress the evidence gathered and dismiss the charge, arguing that he had been subjected to an unlawful seizure. District Court Judge Margaret L. Murphy denied the motion, reasoning that there was no seizure because "[a] mere wave of the arm is not a means of physical force nor can it be considered a sufficient show of authority to make the reasonable person believe that he is not free to continue on his way." Majaev entered a no contest plea and preserved his right to appeal the denial of his motion to dismiss.[1] The court of appeals affirmed the judgment of the district court that no seizure had occurred, reasoning that "a reasonable person would not interpret Trooper Bordner's actions as an intent to restrain or confine." [2]

We granted Majaev's petition for hearing.

### III. STANDARD OF REVIEW

▇▇▇ "Whether a seizure has occurred is a question of fact." [3] Therefore we review whether an encounter between a law enforcement officer and a citizen constituted a seizure under the clearly erroneous standard.[4] A finding is clearly erroneous if this court is left "with a definite and firm conviction that a mistake has been made" upon reviewing the entire record.[5] While we review the trial court's historical factual findings under the clearly erroneous standard, we apply our independent judgment to questions of law presented by constitutional issues.[6] Under this standard, we will "adopt the rule of law most persuasive in light of precedent, reason, and policy." [7]

1. *See Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

2. *Majaev v. State,* Mem. Op. & J. No. 5307, 2008 WL 509074, at *1 (Alaska App., February 27, 2008).

3. *Waring v. State,* 670 P.2d 357, 365 n. 15 (Alaska 1983).

4. *See id.; State v. Bianchi,* 761 P.2d 127, 129 (Alaska App.1988) ("When a trial court is asked to suppress ..., it must review the record and make factual findings. In such a case, the trial court's factual findings will be upheld unless 'clearly erroneous.' ").

5. *Cusack v. Cusack,* 202 P.3d 1156, 1159 (Alaska 2009) (quoting *Millette v. Millette,* 177 P.3d 258, 261 (Alaska 2008)).

6. *Keane v. Local Boundary Comm'n,* 893 P.2d 1239, 1241 (Alaska 1995); *Arco Alaska, Inc. v. State,* 824 P.2d 708, 710 (Alaska 1992).

7. *Lazy Mountain Land Club v. Matanuska–Susitna Borough Bd. of Adjustment & Appeals,* 904 P.2d 373, 382 n. 50 (Alaska 1995) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

## IV. DISCUSSION

■ The Fourth Amendment of the United States Constitution and article I, section 14 of the Alaska Constitution both prohibit "unreasonable searches and seizures." [8] The critical issue to be decided in this case is whether Trooper Bordner's actions constituted a seizure. If they did, the next question is whether this seizure was unreasonable. Because the Alaska Constitution provides broader protection than the United States Constitution in the area of search and seizure, it is appropriate to apply state constitutional protections in this case.[9] Although we carefully consider and "find substantial guidance in cases interpreting the United States Constitution," [10] we are not bound by those decisions when interpreting state constitutional law.[11]

■ To determine whether an encounter between a police officer and a citizen was constitutionally permissible, we employ the two-step analysis described in *Waring v. State*.[12] First we consider whether or not the encounter amounted to a seizure trigger-ing constitutional protections. If we determine that such a seizure occurred, the next inquiry is whether the investigatory stop falls within the "reasonable suspicion exception to the probable cause requirement." [13]

■ A seizure, which includes both full arrests and investigatory stops,[14] "exists only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." [15] Since there was no use of physical force in this case, we focus on whether there was a show of authority sufficient to convert this encounter into a seizure. Our case law has "defined 'show of authority' as a circumstance under which a reasonable person, in view of the objective facts surrounding the incident, would believe that he is not free to leave." [16] Because we use this objective standard to determine whether a law enforcement officer's encounter with a citizen constituted a seizure,[17] Majaev's beliefs at the time of the encounter are not dispositive.[18]

■ Majaev argues that a reasonable person in his situation would not have felt free

8. The federal search and seizure clause provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. Similarly, the state counterpart provides: "The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated." Alaska Const. art. 1, § 14.

9. See *Anchorage Police Dep't Employees Ass'n v. Municipality of Anchorage*, 24 P.3d 547, 550 (Alaska 2001) ("Alaska's search and seizure clause is stronger than the federal protection because article I, section 14 is textually broader than the Fourth Amendment...."); *Ellison v. State*, 383 P.2d 716, 717–18 (Alaska 1963).

10. *Anchorage Police Dep't Employees Ass'n*, 24 P.3d 547, 550 (Alaska 2001).

11. *State v. Jones*, 706 P.2d 317, 321 (Alaska 1985).

12. 670 P.2d 357, 363 (Alaska 1983).

13. *Id.; see also Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (creating a limited exception to the search and seizure rule to permit reasonable searches for weapons when there is a substantial interest in ensuring the safety of the police officer and others); *Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976) (holding that investigatory stops are constitutionally per-missible in circumstances where a police officer "has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred....").

14. *Romo v. Municipality of Anchorage*, 697 P.2d 1065, 1067–68 (Alaska App.1985) (describing three categories of encounters between police and citizens: "(1) a generalized request for information," (2) "an investigatory stop supported by articulable suspicion," and (3) a full arrest).

15. *Id.* at 1068 (internal quotation marks omitted) (quoting *Waring*, 670 P.2d at 363).

16. *Id.* (citing *Waring*, 670 P.2d at 364).

17. *Waring*, 670 P.2d at 364; *Abdou v. State*, Mem. Op. & J. No. 2850, 1994 WL 16196151, at *3 (Alaska App., January 19, 1994).

18. For the purposes of this analysis, we assume that a reasonable person is also a person who is innocent of any crime. *Romo*, 697 P.2d at 1068 ("[T]he 'reasonable person' whose perceptions are under consideration is one who is innocent of any crime. A person who considers himself guilty of some offense probably labors under a number of psychological disadvantages and would tend to treat any action, however harmless or innocuous, by a police officer as threatening.").

to leave because ignoring Trooper Bordner's hand signal would have subjected him to criminal sanctions under AS 28.35.182, the relevant portion of which provides:

> A person commits the offense of failure to stop at the direction of a peace officer in the second degree if the person, while driving or operating a vehicle or motor vehicle or while operating an aircraft or watercraft, knowingly fails to stop as soon as practical and in a reasonably safe manner under the circumstances *when requested or signaled to do so* by a peace officer.[19]

The statute defines a "signal" to include "a hand motion ... used in a manner that a reasonable person would understand to mean that the peace officer intends that the person stop."[20]

The State argues that AS 28.35.182(b) is irrelevant because Majaev had stopped his vehicle before Trooper Bordner waved his hand and contends that the statute only applies to motorists whose vehicles are "literally in motion." We reject this argument. First, the statute applies to individuals "operating" a motor vehicle. In the past, we have interpreted statutory use of the term "operator" to mean "a person who drives or is in actual physical control of a vehicle," regardless of whether the vehicle is moving.[21] Second, the literal application of the State's argument would lead to an absurd result in which Majaev, once stopped, would be legally empowered to ignore Trooper Bordner's hand signal, but if Majaev moved his vehicle at all, the statute would be triggered and he would be forced to stop again to comply with the statute. We conclude that the statute, on its face, applies to a person in Majaev's position.

Citing *Castle v. State*, the State also argues that Majaev would not have been subject to criminal liability under the statute even if he had ignored the gesture and driven away because a person cannot be charged with avoiding police detention if the police did not have a legitimate basis to detain the person in the first place.[22] But the State does not concede that Trooper Bordner lacked reasonable suspicion in the first place. Instead, it argues that if reasonable suspicion had been lacking, Majaev could not have been prosecuted under AS 28.35.182.

The State's argument focuses on the wrong question. The relevant inquiry is not whether Majaev would actually have faced criminal prosecution or punishment under AS 28.35.182, but rather whether a reasonable person in Majaev's position would have believed that he was required to respond to the trooper's gesture in order to comply with the law. A reasonable person in Majaev's position would assume that he was not free to leave because ignoring Trooper Bordner's signal would be a violation of AS 28.35.182(b) and therefore could have subjected such a person to criminal sanction. Statutes like AS 28.35.182 are intended to influence behavior; thus this coercive effect must be considered within our analysis of whether Majaev was seized under the *Waring* test.[23]

The district court correctly determined that Majaev apparently felt free to leave when Trooper Bordner first parked his vehicle and in fact did leave. But the critical moment for the purpose of our analysis occurred when Trooper Bordner signaled to Majaev to return, which triggered the statutory prohibition against ignoring a peace officer. At that moment, Majaev stopped and complied with Trooper Bordner's hand signal, in a manner consistent with his perceived duty under AS 28.35.182.

The show of authority in this situation emanated from AS 28.35.182 and its effect on a reasonable person's evaluation of whether he is free to leave.[24] The existence and

---

**19.** AS 28.35.182(b) (emphasis added).

**20.** AS 28.35.182(d)(2).

**21.** *Jacobson v. State*, 551 P.2d 935, 937 (Alaska 1976).

**22.** 999 P.2d 169, 176–77 (Alaska App.2000).

**23.** *Waring v. State*, 670 P.2d 357, 363 (Alaska 1983).

**24.** We recognize that a balance must be struck between allowing the police to solicit assistance and cooperation from citizens and providing protection against unreasonable seizures. Normally, a confrontation analyzed under the *Waring* free-to-leave test is considered a seizure "only if

applicability of the statute distinguishes this case from holdings in other jurisdictions that a police officer's gesture alone does not constitute a seizure.[25] Because of the statute, Trooper Bordner's gesture was a sufficient show of authority to make a reasonable person in Majaev's position believe that he was no longer free to leave.

Because the district court and the court of appeals both determined that a seizure had not occurred, neither addressed the second step of the analysis: whether Trooper Bordner had reasonable suspicion to seize Majaev.[26] Having now concluded that a seizure did in fact occur, we remand the matter so that the district court may consider this question and make appropriate factual findings.

## V. CONCLUSION

For the foregoing reasons, we REVERSE and REMAND for a determination by the district court regarding whether Trooper Bordner had reasonable suspicion to seize Anton Majaev.

EASTAUGH, Justice, not participating.

the officer added to those inherent pressures by engaging in conduct which a reasonable man would view as threatening or offensive even if coming from another private citizen." *Waring,* 670 P.2d at 364 (quoting 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.2, at 53–54 (1978)); *see also Gomez v. Turner,* 672 F.2d 134, 142 (D.C.Cir.1982) (recognizing that because reasons other than "a fear of official sanction" motivate a reasonable person to stop and cooperate with a police officer, a seizure will only occur when there is "some additional conduct by the officer to overcome the presumption that a reasonable person is willing to cooperate

with a law enforcement officer"). This test is not implicated in this case because the very fact that Trooper Bordner is a police officer triggered the statute, rather than his direct actions.

**25.** *See, e.g., United States v. Laboy,* 979 F.2d 795, 798–99 (10th Cir.1992); *State v. Nelson,* 134 Idaho 675, 8 P.3d 670, 672 (App.2000); *State v. Hall,* 339 Or. 7, 115 P.3d 908, 917 (2005).

**26.** *Majaev v. State,* Mem. Op. & J. No. 5307, 2008 WL 509074, at *5 (Alaska App., February 27, 2008).