NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>Pacific</u> <u>Reporter</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

RUSTY K. MEYER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11343
Trial Court No. 3PA-11-014 CR

O P I N I O N

ON REHEARING

No. 2486 — January 22, 2016

Appeal from the Superior Court, Third Judicial District, Palmer, Vanessa H. White, Judge.

Appearances:  Marjorie Mock, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.  Terisia K. Chleborad, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before:  Mannheimer, Chief Judge, and Allard, Judge.

Judge MANNHEIMER.

The Appellant, Rusty K. Meyer, seeks rehearing of our earlier decision in this case: *Meyer v. State*, unpublished, 2015 WL 1604860 (Alaska App. 2015).

Meyer was convicted of felony driving under the influence based on evidence obtained during Meyer's encounter with the police at a fireworks stand on the Parks Highway.  Before his trial, Meyer filed a motion to suppress this evidence, arguing

that the police had subjected him to an investigatory stop without the necessary reasonable suspicion to justify the stop.

The superior court held an evidentiary hearing and made findings of fact regarding what exactly happened during Meyer's encounter with the police. Based on its findings of fact, the superior court concluded that Meyer's encounter with the police amounted to an investigatory stop for purposes of the Fourth Amendment. But the superior court denied Meyer's suppression motion because the court concluded that this investigatory stop was supported by reasonable suspicion.

On appeal, this Court upheld the superior court's decision on a different ground: we concluded that, given the facts found by the superior court, Meyer's encounter with the police did not amount to an investigatory stop — thus making the issue of reasonable suspicion moot. *Meyer*, 2015 WL 1604860 at *2-3.

In his petition for rehearing, Meyer concedes that an appellate court is authorized to affirm a lower court's ruling using a *legal* analysis that is different from the one the lower court used. [1] That is, Meyer implicitly acknowledges that, in such circumstances, an appellate court need not defer to the lower court's differing legal analysis of the case, but can instead apply its own independent legal analysis.

But Meyer argues that our decision in his case did not rest on a rejection of the superior court's *legal* analysis. Rather, Meyer contends, our decision rested on a rejection of a *finding of fact* made by the superior court.

More specifically, Meyer argues that the superior court's Fourth Amendment conclusion — that Meyer was subjected to an investigatory stop — was a

---

[1] *See Torrey v. Hamilton*, 872 P.2d 186, 188 (Alaska 1994) (an appellate court can affirm a trial court's ruling on any legal theory revealed by the record, including one rejected by the trial court); *see also Russell v. Anchorage*, 626 P.2d 586, 588 n. 4 (Alaska App. 1981).

finding of fact that we were required to defer to, and not a conclusion of law that we could independently review.

To support this argument, Meyer relies on decisions of the Alaska Supreme Court which declare that a court's ruling as to whether a person was seized for Fourth Amendment purposes is a finding of fact — a finding that is reviewed under the deferential "clearly erroneous" standard of review. *See Majaev v. State*, 223 P.3d 629, 631 (Alaska 2010); *Waring v. State*, 670 P.2d 357, 364 n. 15 (Alaska 1983).

If Meyer is correct on this point, then this Court committed error when we independently reviewed the superior court's conclusion that Meyer's encounter with the police constituted an investigatory stop. For as Meyer points out, an appellate court is not authorized to use its independent judgement when assessing the facts of a case under the "clearly erroneous" standard of review. Instead, an appellate court must defer to the lower court's view of the facts: we must accept the facts as found by the lower court unless, based on the record, we are left "with a definite and firm conviction ... that a mistake has been made". [2]

But as we explain in this opinion, even though our supreme court declared in *Waring* and *Majaev* that it is a "question of fact" whether a person's encounter with the police constituted a seizure for Fourth Amendment purposes, the supreme court did not actually follow this rule in either *Waring* or *Majaev*. Instead, the supreme court decided the *Waring* and *Majaev* appeals using the principle that appellate courts normally apply to all types of cases: A trial court's findings of *historical fact* are reviewed deferentially, under the "clearly erroneous" standard; but the proper *legal*

---

[2]   *Geczy v. LaChappelle*, 636 P.2d 604, 606 n. 6 (Alaska 1981); *Mathis v. Meyeres*, 574 P.2d 447, 449 (Alaska 1978).

*categorization* of those facts — *i.e.*, the assessment of the legal consequences of the trial court's findings of fact — is a question of law that the appellate court evaluates *de novo*.

This is the principle that applies to appellate review of trial court rulings regarding whether a Fourth Amendment seizure took place — *i.e.*, rulings as to whether particular police conduct constituted an investigatory stop or an arrest. And, indeed, this is the principle that the supreme court applied in *Waring* and *Majaev*.

Accordingly, this Court acted correctly when we independently evaluated whether the facts of Meyer's case constituted an investigatory stop.

*A closer look at the Alaska Supreme Court's decisions in* <u>Waring</u> *and* <u>Majaev</u>

The question that we have been discussing has its origin in footnote 15 of the *Waring* opinion, 670 P.2d at 364. In this footnote, the supreme court declared that "[w]hether a seizure has occurred is a question of fact."

But as the *Waring* court then explained, "the superior court [in Waring's case] did not make a specific finding [on the question of whether] a seizure occurred." *Ibid.* If the question of whether a seizure occurred were truly a question of fact, then one would expect the supreme court to have remanded Waring's case to the trial court so that the trial judge could make a finding on this factual issue.

(Alaska Criminal Rule 12(d) requires trial judges to make explicit findings of fact when adjudicating suppression motions. When a trial judge fails to make all the findings necessary to resolve a suppression issue, the case must be remanded for supplemental findings.) [3]

---

[3] *See Rockwell v. State*, 176 P.3d 14, 21 (Alaska App. 2008); *Haskins v. Anchorage*, 22 P.3d 31, 32 (Alaska App. 2001); *Long v. State*, 837 P.2d 737, 742 (Alaska App. 1992).

But instead of remanding Waring's case to the trial court, the supreme court proceeded to decide the seizure question independently. The supreme court declared that it was entitled to do this because the ultimate issue of whether, under given facts, a seizure occurred was really a question of law: "After reviewing the record surrounding the initial contact, we conclude that, *as a matter of law*, the [state trooper's] actions ... constituted a seizure of [Waring's co-defendant] Randy Robinson." *Waring*, 670 P.2d at 364 (emphasis added).

The supreme court pursued a similar course in *Majaev* — applying its own independent legal analysis to the facts found by the trial court.

In *Majaev*, the trial court affirmatively found that the trooper's encounter with the defendant did *not* constitute a seizure. That is, the trial court found that the trooper's conduct did not amount to a restraint on Majaev's liberty, either by use of physical force or by "show of authority". *Majaev*, 223 P.3d at 631. And the supreme court, citing *Waring*, declared that the trial court's ruling was a finding of fact that could be reversed only if it was "clearly erroneous". *Ibid.*

But two pages later, the supreme court reversed the trial court's ruling because the supreme court concluded that the trial court engaged in the wrong *legal analysis* (because the trial court focused on the wrong aspect of Majaev's encounter with the officer). Then, after rejecting the trial court's legal evaluation of the encounter, the supreme court independently declared that, under the facts of Majaev's case, a seizure occurred as a matter of law.

Here is the supreme court's analysis:

> The district court correctly determined that Majaev apparently felt free to leave when Trooper Bordner first parked his vehicle and [Majaev] in fact did leave. But the critical moment for the purpose of our analysis occurred

when Trooper Bordner signaled to Majaev to return, which triggered the statutory prohibition against ignoring a peace officer. At that moment, Majaev stopped and complied with Trooper Bordner's hand signal, in a manner consistent with his perceived duty under AS 28.35.182.

The show of authority in this situation emanated from AS 28.35.182 and its effect on a reasonable person's evaluation of whether he is free to leave. The existence and applicability of [this] statute distinguishes this case from holdings in other jurisdictions that a police officer's gesture alone does not constitute a seizure. Because of the statute, Trooper Bordner's gesture was a sufficient show of authority to make a reasonable person in Majaev's position believe that he was no longer free to leave. ... [Thus,] a seizure did in fact occur[.]

*Majaev*, 223 P.3d at 633-34.

As this Court noted in *Phillips v. State*, 271 P.3d 457, 468 (Alaska App. 2012), "[s]ometimes one must look beyond what a court *says* it is doing and, instead, focus on what the court actually *is* doing."

Even though the supreme court's opinions in *Waring* and *Majaev* declare that whether a seizure occurred is a "question of fact", the supreme court actually resolved both of these appeals by applying its own *independent legal analysis* to the historical facts found by the trial court.

*The general principle at work here*

By resolving the *Waring* and *Majaev* appeals this way, the supreme court applied a principle that appellate courts employ in many different situations: A trial court's findings of historical fact are reviewed deferentially under the "clearly erroneous"

– 6 –                                                                 2486

standard of review. But the question of how those facts should be legally categorized —
in other words, the assessment of the *legal consequences* of the trial court's findings of
fact — is a question of law that the appellate court evaluates *de novo*.

For instance, even though a superior court's award of child custody is
typically reviewed for abuse of discretion,[4] the question of "whether the trial court
applied the correct [legal] standard in a custody or visitation determination is a question
of law" which the supreme court reviews *de novo*. *Ross v. Bauman*, 353 P.3d 816, 823
(Alaska 2015).[5] Likewise, the question of "whether [the superior court's] factual
findings are sufficient to support an award of custody or visitation to a third party is a
legal issue to which [the supreme court applies its] independent judgment." *Ibid*.

Similarly, when the supreme court reviews the superior court's determina-
tion that a child is in need of aid, the supreme court will give deference to the superior
court's factual findings, but the supreme court will then independently review the legal
determination of whether probable cause exists to believe that the child is in need of aid.
*In re J.A.*, 962 P.2d 173, 175-76 (Alaska 1998).

Turning to the arena of criminal law, we note that in *Michael v. State*, 115
P.3d 517 (Alaska 2005), the supreme court held that this Court committed error by
employing the deferential "clearly erroneous" standard of review when we evaluated a
trial court's ruling on a sentencing mitigator.

The supreme court explained that the trial court's ruling contained both
findings of historical fact and a conclusion of law drawn from those facts. While the trial
court's findings of historical fact were entitled to deference under the "clearly erroneous"

---

[4]    *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

[5]    Citing *Osterkamp v. Stiles*, 235 P.3d 178, 184 (Alaska 2010); *Elton H. v. Naomi R.*,
119 P.3d 969, 973 (Alaska 2005).

standard of review, this Court committed error by failing to employ its independent judgement when we evaluated the trial court's conclusion regarding the legal consequences of those facts. Here is how the supreme court explained this principle:

> We hold that the correct standard of review of a superior court's application of statutory aggravating and mitigating factors *to a given set of facts* is de novo review.
>
> The existence or non-existence of an aggravating or mitigating factor is a mixed question of law and fact. The determination of whether the defendant's conduct is among the least serious conduct within the definition of the offense involves a two-step process: the court must (1) assess the nature of the defendant's conduct, [which is] a factual finding, and then (2) make the legal determination of whether that conduct falls within the statutory standard of "among the least serious conduct within the definition of the offense." Any factual findings made by the court regarding the nature of the defendant's conduct are reviewed for clear error, but whether those facts establish that the conduct "is among the least serious" under AS 12.55.155(d)(9) is a legal question.

*Michael*, 115 P.3d at 519 (emphasis added).

In the footnote that accompanies this passage from *Michael* (footnote 7), the supreme court approvingly cited *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) — a case which holds that, once the historical facts are established by the trial court, the question of whether those facts suffice to establish "probable cause" or "reasonable suspicion" is a legal question to be determined *de novo* by the appellate court. *Ornelas*, 517 U.S. at 696-99, 116 S.Ct. at 1661-63.

A review of case law from around the country shows that courts often use the phrase "issue of fact" when they are referring to a fact-intensive inquiry — such as whether a seizure occurred in a particular case. But as shown by the wording and

outcome of the Alaska Supreme Court decisions we have just been discussing, even though appellate courts may sometimes use the phrase "issue of fact" to describe the question before them, these courts actually apply the principle we have set forth above — the principle that the proper legal categorization of given facts is an issue of law, not an issue of fact.

One of the better discussions of this point is found in *Watts v. Indiana*, 338 U.S. 49, 51; 69 S.Ct. 1347, 1348; 93 L.Ed. 1801 (1949):

> [The phrase] "issue of fact" ... does not cover a conclusion drawn from [findings of fact], when that conclusion incorporates standards ... or criteria for judgment which in themselves are decisive of constitutional rights. [Defining such] standards and criteria, ... and [the] proper applications [of those standards and criteria], are issues for [an appellate court's] adjudication. ... [I]t is important to distinguish between issues of fact that are ... foreclosed [from relitigation on appeal] and issues which, though cast in the form of determinations of fact, are the very issues [to be] review[ed] [on appeal].

The United States Supreme Court is not alone in endorsing this principle. As demonstrated by the following cases, when courts from around the country are confronted with appeals that squarely raise this issue, they expressly recognize that the proper legal categorization of given facts is a question of law.

Thus, in *State v. Burroughs*, 955 A.2d 43, 48-50 (Conn. 2008), the Connecticut Supreme Court held that the question of whether a seizure occurred is a mixed question of fact and law. An appellate court must defer to the trial court's findings of historical fact. But the ultimate test for whether a seizure occurred is an objective test: whether, in view of all the circumstances, a reasonable person would have believed that he or she was not free to leave. When an appellate court evaluates the facts

of the case (as found by the trial court) against this objective standard, it must use its independent judgement.

The Connecticut court directly addressed this principle in footnote 5 of its opinion:

> We ... note that [we have] been inconsistent in articulating the test for reviewing whether a seizure has occurred. In one line of cases, we have stated that whether a seizure occurred is a question of fact. In other cases, we have distinguished between the trial court's findings of "historical" fact, which we do not overturn unless they are clearly erroneous, and the ultimate question of whether a seizure occurred, which is subject to a "scrupulous independent review of the record to ensure that the trial court's determination was supported by substantial evidence."
>
> We now clarify that appellate review of whether a seizure occurred is a mixed question of law and fact, and when there is no dispute as to the underlying facts, as in the present case, or when the trial court's finding of historical facts is not clearly erroneous ... , it is the duty of the reviewing court to make an independent legal determination of whether a reasonable person in the defendant's position would have believed that he was not free to leave.

*Burroughs*, 955 A.2d at 48 (citations omitted).

Many other appellate courts have explicitly acknowledged that this is the proper approach. *See Henson v. United States*, 55 A.3d 859, 863 (D.C. App. 2012) ("We ... review findings of historical fact only for clear error ... [and] we view the evidence presented at the suppression hearing in the light most favorable to the party prevailing below ... . However, legal conclusions on Fourth Amendment issues, including whether a seizure has occurred ... , are legal questions that we review de novo."); *State v. Pannell*,

901 P.2d 1321, 1323 (Idaho 1995) ("When reviewing 'seizure' issues, we defer to the trial court's factual findings unless they are clearly erroneous. [But we] freely review, de novo, the trial court's legal determination of whether or not an illegal seizure occurred."); *Jones v. State*, 682 A.2d 248, 253 (Md. 1996) ("When the question is whether a constitutional right, such as ... a defendant's right to be free from unreasonable searches and seizures, has been violated, the reviewing court makes its own independent constitutional appraisal, by reviewing the law and applying it to the peculiar facts of the particular case."); *State v. Lisenbee*, 13 P.3d 947, 949 (Nev. 2000) ("Fourth Amendment seizure issues ... often involve mixed questions of law and fact. This court reviews findings of historical facts under the clearly erroneous standard, but the legal consequences of those facts are questions of law which we review de novo."); *State v. Ingram*, 331 S.W.3d 746, 756-57 (Tenn. 2011) ("The ultimate conclusion [as to] whether the facts establish that a person was under custodial arrest is one of law."); *State v. Carter*, 812 P.2d 460, 465 n. 3 (Utah App. 1991) ("[A] trial court's ultimate determination of whether on particular facts an encounter amounts to a seizure under the fourth amendment has been held to be a legal conclusion and thus afforded no deference on appeal, but reviewed under a correction of error standard."); *State v. Thorn*, 917 P.2d 108, 111 (Wash. 1996) ("[T]he determination of whether a seizure has occurred is a mixed question of law and fact. The resolution by a trial court of differing accounts of the circumstances surrounding the encounter are factual findings entitled to great deference. ... However, the ultimate determination of whether those facts constitute a seizure is one of law and is reviewed de novo."); *State v. Young*, 717 N.W.2d 729, 736 (Wis. 2006) ("Whether a person has been seized is a question of constitutional fact. ... [W]e accept the [trial] court's findings of evidentiary or historical fact unless they are clearly erroneous, but we determine independently whether or when a seizure occurred.").

Thus, when the Alaska Supreme Court applied its own independent legal analysis to the trial court's findings of fact in *Waring* and *Majaev*, it was following a well-established legal principle.

*One additional method of analyzing this controversy*

Thus far in this opinion, we have relied on traditional legal research and textual analysis to reach the conclusion that an appellate court independently assesses the proper legal categorization of the facts found by a trial court. But there is another way to approach this problem: by asking what the real-world consequences would be if, in these situations, appellate courts adopted a "clearly erroneous" standard of review versus a "*de novo*" standard of review.

Consider the following hypothetical case: Two co-conspirators are using a motor vehicle to transport contraband (*e.g.*, illegal drugs, or bootleg alcohol, or stolen goods). While their vehicle is parked along the street, and while the two co-conspirators are sitting in it, a police officer approaches and begins to ask them questions. Things quickly go south for the co-conspirators: this encounter leads to the discovery of their contraband, and both of them end up as defendants in a criminal prosecution. Because of administrative problems, the two defendants' cases are assigned to different judges.

Each defendant files a motion to suppress all evidence of the contraband, arguing that the police officer engaged in an investigative stop without the required reasonable suspicion of criminal activity. It turns out that the police officer videotaped the encounter, and the pertinent facts of the encounter are not in dispute. But the two judges reach different conclusions based on these same undisputed facts: One of the judges rules that the police officer's words and actions constituted an investigatory stop — *i.e.*, a show of authority that would make a reasonable person in the defendants'

position believe that they were no longer free to leave.  The other judge, however, rules that the encounter never rose to this level of coercion, and thus no investigatory stop occurred.

And now, add one final element to the hypothetical case:  Assume that, given the existing case law dealing with investigatory stops, the suppression motions were reasonably debatable, and the two judges' differing conclusions as to whether a seizure occurred are each potentially justifiable.

If an appellate court is required to employ the deferential "clearly erroneous" standard of review when it evaluates the trial judges' rulings — the judges' differing conclusions as to whether a seizure occurred, given the undisputed facts — then the appellate court would be required to affirm *both* of the contradictory rulings.

As we explained earlier, under the "clearly erroneous" standard of review, an appellate court must affirm a trial court's ruling unless, after full examination of the record, the appellate court is left with a definite and firm conviction that a mistake has been made.  In this hypothetical, we are assuming that both of the trial judges' rulings were reasonable.  Both of those rulings should therefore be affirmed under a "clearly erroneous" standard.

There are, in fact, areas of the law where appellate courts will uphold disparate rulings even when those rulings are made on exactly the same facts.  For example, when we review a sentence of imprisonment for excessiveness, we employ the "clearly mistaken" standard of review — a standard of review that is "founded on two concepts:  first, that reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence; [and] second, that society is willing to accept these sentencing discrepancies, so long as a judge's sentencing decision falls

within a permissible range of reasonable sentences." *State v. Hodari*, 996 P.2d 1230, 1232 (Alaska 2000). [6]

But as demonstrated by our supreme court's decision in *Michael v. State*, 115 P.3d 517 (Alaska 2005), our supreme court is not willing to countenance this same level of idiosyncracy in *all* sentencing rulings. In *Michael*, the supreme court held that an appellate court must use *de novo* review when it evaluates a sentencing judge's ruling as to whether given facts constitute a particular statutory aggravating or mitigating factor. *Michael*, 115 P.3d at 519.

By requiring *de novo* review, the supreme court adopted a standard of review that imposes a greater degree of uniformity and predictability — by treating the ultimate question as an issue of law. Once an appellate court categorizes a given set of facts as constituting proof of a specific aggravator or mitigator (or as *not* constituting proof of that aggravator or mitigator), this becomes precedent for all future trial court rulings on this subject.

These values of uniformity and predictability are especially important when courts issue rulings about the meaning or scope of constitutional guarantees, such as the Fourth Amendment's protection against unreasonable searches and seizures. Society is not willing to have constitutional protections vary according to the views of the particular trial judge assigned to a defendant's case. And judges, lawyers, and police officers need predictable rules when they enforce and apply Fourth Amendment law.

Employing a standard of "*de novo*" or "independent" review on appeal helps to foster these goals of uniformity and predictability. Employing a deferential "clearly erroneous" standard of review tends to defeat them. Thus, to the extent that the supreme court's decisions in *Waring* and *Majaev* are ambiguous on this point (*i.e.*, the

---

[6] Quoting *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997).

standard of review that an appellate court should apply when reviewing a trial court's ruling as to whether a seizure occurred), *Waring* and *Majaev* should be interpreted as applying and endorsing a *de novo* standard of review.

*Conclusion*

We conclude that we acted properly when we applied our independent judgement to the question of whether, under the facts found by the superior court, Meyer's encounter with the police constituted a seizure for purposes of the Fourth Amendment.

Accordingly, having considered Meyer's petition for rehearing, we reaffirm our earlier decision in this case.